IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRCT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                      Criminal Action No. 2:24CR4

NITESH RATNAKAR,

        Defendant.

## DEFENDANT'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION TO RESTRAIN DEFENDANT FROM DISSIPATING OR ENCUMBERING ASSETS

Defendant, Nitesh Ratnakar, through his undesigned counsel files this response in opposition to the Government's motion to restrain Defendant from dissipating or encumbering assets and states:

## FACTS

1. Dr. Ratnakar is a licensed medical physician who maintains an extensive medical practice that services patients in West Virginia and Eastern Ohio.

2. In or about 2017, Dr. Ratnakar retained accountants to handle the payroll taxes of the medical practice.

3. Accountant Glen Wyland was responsible for reporting the payroll taxes arising from the medical practice in West Virginia. The accountants that were responsible

for reporting the payroll taxes arising from the practice in Ohio were Maria Cominsky and Gil Ullom.

4. On February 21, 2024, an indictment was returned against Dr. Ratnakar for failure to report and pay over the payroll taxes arising from the medical practice in West Virginia and a research and development entity, also located in West Virginia, called Saneso. The indictment also alleged that the withholding reported on three Form 1040 tax returns of Dr. Ratnakar was incorrect.

5. Accountant Glen Wyland was the person who was responsible to prepare and file each of the tax returns mentioned in the indictment.

6. The indictment alleges a tax loss of $2,419,560.07.

7. During the investigation and prior to the indictment being returned, Dr. Ratnakar voluntarily made payments in excess of $1.8 million to the IRS for the payroll taxes here in issue.

8. Following the return of the indictment which alleged a tax loss of $2,419,560.07, Dr. Ratnakar continued to make voluntarily payments to the IRS to be applied to the payroll taxes here in issue. To date, Dr. Ratnakar has paid approximately $2.2 million. A schedule of the payments is attached hereto as Exhibit "A".

9. Dr. Ratnakar's ability to make the payments to the IRS to date is directly connected to his ability to continue to operate his medical practice.

10. Dr. Ratnakar has not taken any action to improperly dissipate his assets.

11. The Government has added the 2017 tax period, a year that was not included in the indictment, to its tax calculations and now asserts that the total amount for

restitution purposes should be approximately $3.7 million. This amount ignores all payments made by Dr. Ratnakar to date.

**Argument**

The motion of the United States fails to apprise this Honorable Court that Dr. Ratnakar has paid a substantial amount of the tax loss alleged in the indictment. For example, during May 2025, Dr. Ratnakar paid $222,000 to the IRS to be applied to the outstanding balance. Dr. Ratnakar anticipates that within the next 90 days he will be able to make another substantial payment to the IRS for the outstanding payroll taxes. At that time, the tax loss alleged in the indictment will be nearly paid in full. It is Dr. Ratnakar's intent to fully pay the amount of payroll taxes alleged in the indictment prior to the end of this year.

In addition to Dr. Ratnakar's voluntary payments to the IRS, the Government's motion fails to address four other important factors that weigh against the Government's request for an order restraining Dr. Ratnakar from dissipating or encumbering his assets:

a. The Government's definition of the terms "dissipating" and "encumbering" are not defined in the Government's motion;

b. Dr. Ratnakar's medical practice requires working capital to continue to operate;

c. The Sixth Amendment affords Dr. Ratnakar the constitutional right to be represented in this case by the legal counsel of his choice; and

d. Dr. Ratnakar has a pending motion for new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure which the Defendant believes to be meritorious.

## The Government's definition of the terms "dissipating" and "encumbering" are not defined in the Government's motion

The Government requests this Court to enter an order that states: "Defendant, Nitesh Ratnakar, along with any agents, representatives, or co-owners, are hereby restrained from encumbering, liquidating, selling, trading, or otherwise disposing of any assets except those which are necessary to pay for normal, customary, and reasonable living expenses, unless Defendant, Nitesh Ratnakar, obtains permission from the United States of America * * * " This position is patently overbroad and unreasonable. Further, in Dr. Ratnakar's case, the Government's position is unnecessary, premature, and improper. For example, stockholders are the co-owners of a corporation. The Government appears to take the position that it can prohibit these stockholders from selling their stock. The Government also appears to take the position that it can dictate to Dr. Ratnakar which expenses, if any, that will be paid that arise from the operation of his medical practices. The Government appears to take the position that Dr. Ratnakar cannot borrow funds by encumbering the equity in any assets he owns. This position is not rational. As long as the transaction results in the raising of capital equal to the liability there will be no change in Dr. Ratnakar's net worth. This type of transaction is often necessary to create liquidity in order to meet financial obligations of all types. The Government has made no effort to limit its definition "dissipation of assets" to those incidents where assts are transferred to a third party without receiving back assets of equal fair market value. As a result, the Government's motion must be denied.

### Dr. Ratnakar's medical practice requires working capital to continue to operate

The United States has failed in its motion to make any effort to "carve out" the financial operations of his medical practice operating in West Virginia and Eastern Ohio. As active business entities the medical practices pay expenses continuously such as rent, utilities, supplies, employee payroll, current payroll taxes, etc. If granted the motion of the United States prohibiting Dr. Ratnakar from dissipating or encumbering any asset will cause irreparable harm to Dr. Ratnakar, the employees, and the patients.

### The Sixth Amendment affords Dr. Ratnakar the constitutional right to be represented in this case by the legal counsel of his choice

At the present time, Dr. Ratnakar's motion for judgment of acquittal, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, and motion for new trial, pursuant to Rule 33 remain pending. The Sixth Amendment affords Dr. Ratnakar the right to be represented in these proceedings by counsel of his choice. The pending motion of the Government makes no effort to "carve out" Dr. Ratnakar's expenditures for continued legal representation. The United States Supreme Court has recognized a Defendant's right to use his/her assets to pay for the legal representation of his/her choice. See *Luis v. United States*, 578 U.S. 5 (2016) (the pretrial freezing of a defendant's legitimate assets to prevent them from being used to pay her lawyers violated the Sixth Amendment's right to counsel).

### Dr. Ratnakar has a pending motion for new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure which is likely to be meritorious.

At trial, Government's witness, Accountant Glen Wyland, confirmed that he had

misadvised Dr. Ratnakar, both orally and in writing, during the period of time alleged in the indictment that he had prepared and timely filed the Form 941 quarterly payroll tax returns for Dr. Ratnakar's West Virginia entities. Wyland also misrepresented to Dr. Ratnakar that there was no payroll tax liability due from Dr. Ratnakar's West Virginia entities. Wyland further incorrectly told Dr. Ratnakar that his entities did not owe payroll taxes because his entities had millions of dollars of research and development tax credits that completely offset any payroll tax obligation. Dr. Ratnakar believes in earnest that based upon these facts, the following case law supports the granting of his motion for new trial:

    i. *United States v. Olazabal*, 2014 U.S. Dist LEXIS 183826 (E.D. NY 2014);

    ii. *United States v. Rafiekian,* 68 F. 4th 177 (4th Cir. 2023); and

    iii. *United States v. Campbell,* 977 F.2d 854 (4th Cir. 1992).

In addition, the application of Rule 33 in the Fourth Circuit following *Campbell* and *Rafiekian* is thoroughly discussed in a U.S. Law Week article, The Fourth Circuit Has The Most Liberal Rule 33 Interpretation, by Palvia and Mc Loughlin (July 18, 2023) A copy is attached hereto as Exhibit "B".

Perhaps even more troubling than each of the factors set forth herein above, is the fact that the United States has made to effort to present a compelling reason why it needs such dramatic action to be taken at this time and why this matter cannot be addressed in due course after Dr. Ratnakar's pending post trial motions are decided.

WHEREFORE, Dr. Ratnakar respectfully requests that the motion of the Government to restrain him from dissipating or encumbering assets be denied at this time.

Respectfully submitted,

*s/s David M. Garvin*
David M. Garvin
Pro Hac Vice Counsel for Defendant
David M. Garvin, P.A.
2333 Ponce De Leon Blvd.
Suite 314
Coral Gables, Florida 33134
Tel: 305-371-8101
Fax: 305-371-8848
Email: dgarvin@garvin.law
Email: ontrial2@gmail.com

*/s/ Harry A. Smith III*
Harry A. Smith III
Counsel for Nitesh Ratnakar
Jory & Smith LC
10 South Randolph Avenue
Elkins, West Virginia 26241
Tel: 304-636-3553
Email: hasmith@jorysmith.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 22, 2024, I electronically filed the foregoing response with the Clerk of the Court using CM/ECF, which will send notification of such filing to all counsel of record.

/s/ Harry A. Smith, III

# Exhibit "A"

Payments made by Dr. Ratnakar for the payroll taxes in issue:

$40,000.00
$30,000.00
$30,000.00
$30,000.00
$38,704.40
$47,727.90
$43,127.80
$28,944.13
$30,991.52
$34,687.15
$55,994.55
$50,000.00
$43,565.25
$49,810.55
$45,000.00
$60,000.00
$61,320.50
$23,621.25
$20,000.00
$20,000.00
$20,000.00
$20,000.00
$20,000.00
$20,000.00
$40,000.00
$50,000.00
$50,000.00
$70,000.00
$80,000.00
$80,000.00
$70,000.00
$80,000.00
$85,000.00
$45,000.00
$60,000.00
$54,000.00

| Amount | Description |
|---|---|
| $35,000.00 | |
| $25,000.00 | Check No. 1145 |
| $24,000.00 | Check No. 1406 |
| $30,000.00 | Check No. 1401 |
| $ 3,845.27 | Check No. 1480 |
| $30,000.00 | Check No. 1402 |
| $ 3,845.26 | Check No. 1481 |
| $25,000.00 | Check No. 1403 |
| $23,000.00 | Check No. 1404 |
| $23,000.00 | Check No. 1405 |
| $25,000.00 | 04/21/25 |
| $30,000.00 | 04/21/25 |
| $30,000.00 | 04/21/25 |
| $25,000.00 | 04/21/25 |
| $23,000.00 | 04/21/25 |
| $23,000.00 | 04/21/25 |
| $47,422.00 | Valley Overpayment |
| $75,243.00 | Valley Overpayment |
| $ 2,976.00 | Valley Overpayment |
| $19,000.00 | 11/19/2023 Check |
| $39,000.00 | 12/11/2023 Check |
| $15,000.00 | 12/11/2023 Check |
| $11,076.00 | 2017 Withheld Refund |
| $ 2,392.00 | 2018 Withheld Refund |
| $ 6,833.00 | 2020 Withheld Refund |
| $ 8,942.00 | 2021 Withheld Refund |
| $20,285.00 | 2022 Withheld Refund |

**Total $2,123,354.53**

# Exhibit "B"

US Law Week
July 18, 2023, 4:00 AM

# The Fourth Circuit Has the Most Liberal Rule 33 Interpretation

*Tanisha Palvia and Jim McLoughlin of Moore & Van Allen analyze the Rule 33 standard, the path to the Supreme Court for this important circuit split, and its potential impact on criminal cases.*

The federal circuits are split on the standard for granting a new trial under Rule 33 of the Federal Rules of Criminal Procedure after a criminal conviction. In May, the Fourth Circuit weighed in, adding to the divide.

In *U.S. v. Rafiekian*, the court affirmed the district court's grant of a new trial, which was based solely on the trial judge's disagreement with jury inferences drawn from the evidence.

*Rafiekian II* arose from the prosecution of an executive of former national security adviser Michael Flynn's Flynn Intel Group. Bijan Rafiekian was accused of acting as an unregistered agent of Turkey as well as conspiring to act as an unregistered agent and to make a false Foreign Agents Registration Act filing.

After the jury voted to convict, the district court granted Rafiekian's Rule 29 motion, concluding no rational juror could find that he had acted as an unregistered agent for Turkey or that he had filed a false FARA registration. The district court conditionally ordered a new trial under Rule 33. The government appealed.

In *Rafiekian I*, a Fourth Circuit panel reversed the Rule 29 acquittal. The panel also ruled the district court had not explained its Rule 33 ruling sufficiently. On remand, in a 51-page opinion, the district court again granted a new trial based solely on disagreement with jury inferences from the evidence. The government appealed again.

A Fourth Circuit panel of three judges affirmed the grant of the new trial, holding on a Rule 33 motion, the test is whether the "evidence weighs so heavily against the verdict that it would be unjust to enter judgment" and finding the district court did not abuse its discretion when basing its decision solely on disagreement with jury inferences.

The panel held that the "key question ... is not what *kinds* of evidence support the verdict, but the *weight of that evidence.*" The panel took its 1992 decision, *United States v. Campbell*, one step further, ruling that disagreement with jury inferences alone can be the basis for granting a new trial, a holding that no other circuit has explicitly adopted.

Critical to the result, the panel limited its review to an abuse of discretion by the district court. Combination of the abuse of discretion standard of review with the more lenient Rule 33 standard vests significant power over new trial decisions with the district courts.

The panel's decision also emphasizes how critical it is to understand the differing standards for a Rule 29 motion for judgment of acquittal and a Rule 33 motion for a new trial.

Succeeding under Rule 29 is rare because the evidence, which must be viewed in the light most favorable to the government, must be so deficient that acquittal is the only correct verdict. Since no such rule applies under Rule 33, the defense has a more level playing field.

The panel rejected the government's argument that federal circuits are unanimous that a new trial can't be granted solely based on disagreement with jury inferences and that Rule 33 requires "specific defects or indicia of unreliability in the trial evidence."

On the surface, Rule 33 arguably provides little guidance on what the standard should be—it permits grant of a new trial when "the interest of justice so requires."

The notes of the Advisory Committee on Rules address the timing of the motion, but don't comment on the standard, stating "other[ than timing], it substantially continues existing practice." The circuits have little consensus. The First and Third grant a Rule 33 motion if a "miscarriage of justice" or "manifest injustice" would result.

The Second, Fifth, Sixth, Seventh, Eighth, Ninth, and Eleventh grant the motion only when "the evidence preponderates heavily against the verdict to such an extent that it would be manifest injustice to let the verdict stand," but the Fifth has acknowledged that it "has not always articulated a uniform standard."

The Tenth and DC circuits require "a definite and firm conviction that a mistake has been committed." With the Fourth adding yet another standard to the mix, it is time for the US Supreme Court to weigh in to resolve the issue once and for all.

With *Rafiekian*, the Fourth Circuit now has the most liberal interpretation of the Rule 33 standard, making this issue ripe for the Supreme Court to address.

The government has a strong interest in settling the issue, since, as the law stands—at least in the Fourth Circuit—cases based entirely on inferences drawn from circumstantial evidence (such as most white-collar crimes) are susceptible to new trial determinations based solely on a district court disagreeing with the jury's inferences.

On May 13, the government requested more time from the Fourth Circuit to file a petition for rehearing en banc, which requests all judges of the Fourth Circuit to hear a case. The motion was granted, extending the time to file to July 3, 2023. But that deadline passed, and the government didn't file the petition for rehearing, leaving the Supreme Court as the only remaining path for review.

The case is United States v. Bijan Rafiekian, 68 F.4th 177 (4th Cir. 2023), decided May 18, 2023.

*This article does not necessarily reflect the opinion of Bloomberg Industry Group, Inc., the publisher of Bloomberg Law and Bloomberg Tax, or its owners.*

Author Information

Tanisha Palvia is member of Moore & Van Allen's litigation group. She represent individuals and corporations in white-collar criminal prosecution and government enforcement actions.

Jim McLoughlin is a member of Moore & Van Allen's litigation group, with more than 35 years of experience in civil disputes, criminal investigations, and trials.

Write for Us: Author Guidelines

© 2023 Bloomberg Industry Group, Inc. All Rights Reserved