## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                            Criminal Action No. 2:24-CR-4

NITESH RATNAKAR,

        Defendant.

_____/

## UNOPPOSED MOTION OF DEFENDANT NITESH RATNAKAR
## FOR LEAVE TO SUPPLEMENT HIS PENDING MOTION FOR
## NEW TRIAL MADE PURSUANT TO RULE 33

Nitesh Ratnakar, through his undersigned counsel, respectfully moves this Honorable Court for leave to supplement his pending motion for new trial, made pursuant to Rule 33 of the Federal Rules of Criminal Procedure, and as grounds therefore states:

1. On December 22, 2024, Defendant timely filed his motion for new trial (DOC#115) pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

2. The subject motion remains pending before the Court.

3. Upon reviewing his arguments contained in his motion for new trial, Defendant realized that he had omitted one of his arguments. Dr. Ratnakar believes that the omitted argument may affect the Court's analysis of Dr. Ratnakar's pending motion for new trial. A copy of the supplemental argument is attached hereto as Exhibit "A" to this motion.

4. The interests of justice would be best served by the granting of this motion.

5.  Counsel for Dr. Ratnakar contacted counsel for the Government and he indicated that the United States did not have an objection to this motion.

WHEREFORE, Defendant, Nitesh Ratnakar, respectfully moves this Honorable Court to grant him leave to file the attached supplemental argument regarding his pending motion for new trial.

Respectfully submitted,

*s/s David M. Garvin*
David M. Garvin
Pro Hac Vice Counsel for Defendant
David M. Garvin, P.A.
2333 Ponce De Leon Blvd.
Suite 314
Coral Gables, Florida 33134
Tel: 305-371-8101
Fax: 305-371-8848
Email: dgarvin@garvin.law
Email: ontrial2@gmail.com


*/s/ Harry A. Smith III*
Harry A. Smith III
Counsel for Nitesh Ratnakar
Jory & Smith LC
10 South Randolph Avenue
Elkins, West Virginia 26241
Tel: 304-636-3553
Email: hasmith@jorysmith.com


## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE

I hereby certify that I communicated with counsel for the Government concerning this motion and counsel indicated that the Government has no objection.

/s/ Harry A. Smith, III
Harry A. Smith

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 25, 2025, I electronically filed the foregoing motion for leave with the Clerk of the Court using CM/ECF, which will send notification of such filing to all counsel of record.

<u>/s/ Harry A. Smith, III</u>
Harry A. Smith

# Exhibit "A"

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**vs.**                                **Criminal Action No. 2:24-CR-4**

**NITESH RATNAKAR,**

        **Defendant.**

_____/

**SUPPLEMENTAL ARGUMENT
OF DEFENDANT NITESH RATNAKAR IN
SUPPORT OF HIS PENDING MOTION FOR
<u>NEW TRIAL MADE PURSUANT TO RULE 33</u>**

Nitesh Ratnakar, through his undersigned counsel, files this supplemental argument in support of his pending motion for new trial (DOC#115) made pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

The Government has argued that the jury could have concluded from the evidence introduced at trial that Dr. Ratnakar did not rely upon the tax advice provided by accountant Glen Wyland and further a rational jury could have disregarded what Glen Wyland said in its entirety, despite the fact that the Government called Glenn Wyland as its witness.

These arguments by the Government are without logic. When a witness has testified, the jury is instructed to determine whether the witness had any reason to lie. For example, the jury may have decided not to believe the testimony of Glen Wyland when he testified that Dr. Ratnakar brought him all of the quarterly payroll tax returns to sign and back date

after WVGE and Saneso received grand jury subpoenas for these records. Glen Wyland obviously did not want to be charged with obstruction of justice and he had been granted immunity for this testimony. The Court's instructions cautioned the jury that witnesses that have obtained immunity from the Government may have a reason to provide inaccurate testimony. To the extent that Wyland attempted to shift blame from himself to Dr. Ratnakar the jury would have had plenty of reasons to arrive at the conclusion that they could not rely upon Wyland's testimony in this area. As a result, the jury rendered a not guilty verdict as to Count 42.

This does not mean that the jury had ample reason to disregard **all** of Glen Wyland's testimony. Wyland testified that he knew that Dr. Ratnakar was relying upon him to timely prepare the quarterly payroll tax returns for West Virginia Gastroenterology and Endoscopy ("WVGE") and Saneso. Wyland also admitted that he lied to Dr. Ratnakar and told him that the 941 forms had been filed when in fact they had not. Wyland further admitted that he falsely told Dr. Ratnakar that the payroll tax obligation of WVGE and Saneso during the quarters in issue was zero because the entities had accumulated research and development tax credits that eliminated the entire payroll tax obligation each quarter.

Glen Wyland made these statements against his own interests. He had no motive to lie. By making these statements Wyland incriminated himself. Historically, parties that make statements against their own interests have been recognized as truthful because they have no reason to lie. In fact, Rule 804 (b)(3) of the Federal Rules of Evidence provides that statements of a declarant made outside of court that tend to expose the declarant to criminal liability are not excluded by the rule against hearsay if the declarant is unavailable

2

as a witness.  This means that the statement is admitted into evidence even though the declarant is not present to be cross-examined. That is because such testimony has a high probability of being truthful.

A copy of an excerpt of Glen Wyland's trial testimony on this point is attached hereto as Exhibit "A".  Wyland was solely responsible to prepare and file the Form 941 payroll tax returns and it was his sole responsibility to report the amount of payroll taxes that were due each quarter.

It should be noted that Dr. Ratnakar also relied upon Glen Wyland's advice to his financial detriment. Both WVGE and Saneso had the opportunity to receive Government funds from the Payroll Protection Program and from Employee Retention Tax Credits. The amount of funds available was substantial. Nonetheless, Wyland advised Dr. Ratnakar to not apply for these funds and to simply keep using research and development tax credits for his payroll tax obligations. See Exhibit "B" attached hereto. This advice was followed by Dr. Ratnakar. As a result, WVGE and Saneso did not participate in the Payroll Protection Program nor the Employee Retention Tax Credit program despite the fact that not participating in these two programs was clearly not in his financial interests.

If the jury disregarded Glen Wyland's testimony in its entirety, as suggested by the Government, then the jury did not fulfill its obligation to determine Dr. Ratnakar's lack of willfulness as instructed by the Court. Under such circumstances, the Court has the obligation to weigh the evidence presented during trial to avoid a miscarriage of justice. As stated above, to the extent that Glen Wyland testified against his own interests and

exposed himself to criminal liability the Court should give great weight to this evidence regardless of what the jury did.

The record is clear that no witness other than Wyland ever discussed research and development credits and their affect on the payroll tax liability of WVGE and Saneso with Dr. Ratnakar. Wyland testified that he had spoken with Revenue Agent Granados on approximately six occasions and wrote to her at least once regarding the fact that he believed that WVGE and Saneso had overpaid its payroll taxes and were entitled to a refund. Wyland was clearly in charge of handling these matters for WVGE and Saneso.

### Conclusion

Rule 33 vests the Court with the authority to challenge the jury's application of the law, including willfulness, as well as the weight that the evidence deserved. In the instant case, the Government's star witness, Glen Wyland, provided uncontroverted testimony that Dr. Ratnakar relied upon him to timely prepare and file the payroll tax returns and to report to him the tax obligation that needed to be paid each quarter. These statements were statements against Wyland's own self interests. As such, there is no reason for these statements not to be believed. If these statements are believed, then the only verdict that is consistent with the law is not guilty as to counts 1 through 41. As a result, the motion for a new trial should be granted. Finally, even if the jury disregarded the testimony of Glen Wyland in its entirety, the verdict should have been not guilty as to counts 1 through 41 due to lack of evidence on the essential element of willfulness. The Court should take action and grant a new trial in the instant case to prevent a miscarriage of justice.

Dr. Ratnakar believes in earnest that based upon the facts set forth above, the following case law supports the granting of his motion for new trial:

    i. *United States v. Olazabal*, 2014 U.S. Dist LEXIS 183826 (E.D. NY 2014);

    ii. *United States v. Rafiekian,* 68 F. 4th 177 (4th Cir. 2023); and

    iii. *United States v. Campbell,* 977 F.2d 854 (4th Cir. 1992).

In addition, the application of Rule 33 in the Fourth Circuit following *Campbell* and *Rafiekian II* is thoroughly discussed in a U.S. Law Week article, The Fourth Circuit Has The Most Liberal Rule 33 Interpretation, by Palvia and Mc Loughlin (July 18, 2023) A copy is attached hereto as Exhibit "C".

WHEREFORE, Defendant, Nitesh Ratnakar, respectfully requests this Honorable Court to consider the additional arguments contained herein and grant his motion for a new trial.

                Respectfully submitted,

                *s/s David M. Garvin*
                David M. Garvin
                Pro Hac Vice Counsel for Defendant
                David M. Garvin, P.A.
                2333 Ponce De Leon Blvd.
                Suite 314
                Coral Gables, Florida 33134
                Tel: 305-371-8101
                Fax: 305-371-8848
                Email: dgarvin@garvin.law
                Email: ontrial2@gmail.com

*/s/ Harry A. Smith III*
Harry A. Smith III
Counsel for Nitesh Ratnakar
Jory & Smith LC
10 South Randolph Avenue
Elkins, West Virginia 26241
Tel: 304-636-3553
Email: hasmith@jorysmith.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 25, 2025, I electronically filed the foregoing supplement argument with the Clerk of the Court using CM/ECF, which will send notification of such filing to all counsel of record.

/s/ Harry A. Smith, III

6

Exhibit "A"

1

```
 1                  IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
 2                            AT CLARKSBURG
    ------------------------------x
 3  UNITED STATES OF AMERICA,      :
                                   :
 4       Plaintiff,                :
                                   : CRIMINAL ACTION NUMBER:
 5    vs.                          : 2:24-CR-4
                                   :
 6  NITESH RATNAKAR,               :
                                   :
 7       Defendant.                :
    ------------------------------x
 8  PROCEEDINGS HAD IN **DAY 3** OF THE JURY TRIAL OF THE ABOVE-STYLED
      ACTION ON NOVEMBER 14, 2024, BEFORE THE HONORABLE THOMAS S.
 9                  KLEEH, CHIEF DISTRICT JUDGE.

10     APPEARANCES:

11     FOR THE UNITED STATES OF AMERICA:
          Jarod J. Douglas, Esq.
12        U.S. Attorney's Office
          P.O. Box 591
13        Wheeling, WV 26003
          jarod.j.douglas@usdoj.gov
14
          Eleanor F. Hurney, Esq.
15        U.S. Attorney's Office
          217 W. King Street, Suite 400
16        Martinsburg, WV 25401
          eleanor.hurney@usdoj.gov
17
       FOR THE DEFENDANT:
18        David M. Garvin, Esq.
          David M. Garvin, P.A.
19        2333 Ponce De Leon Boulevard, Suite 314
          Coral Gables, FL 33134
20        dgarvin@garvin.law

21        Harry A. Smith, III, Esq.
          Jory & Smith, L.C.
22        One Randolph Avenue
          P.O. Box 1909
23        Elkins, WV 26241
          hasmith@jorysmith.com
24
       The Defendant was present in person.
25     Proceedings recorded by mechanical stenography.
       Transcript produced by computer-aided transcription.
```

Rachel Kocher, RPR/CRR
500 West Pike Street, Clarksburg, WV 26301
(304) 623-7179

G. Wyland - Cross-Examination (Mr. Garvin)

1    And is that the same endoscope that we've been talking
2 about all morning?
3 A.   Yes, I believe it is.  Because that was the one that was
4 through FDA and such.
5 Q.   And putting it back in perspective --
6         MR. GARVIN:  You can take that down and put up the
7 next one.
8 BY MR. GARVIN:
9 Q.   Putting that back into perspective:  You were of the
10 belief that the amount spent in R&D expenditures exceeded the
11 payroll obligation.
12 A.   Yes.
13 Q.   The payroll tax obligation.  Correct?
14 A.   Yes, I was.
15 Q.   I'm now going to show you -- well, one second.
16      (Pause in proceedings.)
17         MR. GARVIN:  Your Honor, at this time the defense
18 would move into evidence Defense Exhibits 47 and 48 as letters
19 written by Mr. Glen Wyland.  Forty-seven would be -- relates to
20 the Payroll Protection Program, better known as PPP; and 48
21 would relate to the Employee Retention Tax Credit.
22         THE COURT:  What's that tax credit again?  I'm sorry,
23 Mr. Garvin.
24         MR. GARVIN:  Employee Retention.
25         THE COURT:  Okay.  Understood.

G. Wyland - Cross-Examination (Mr. Garvin)

1    Any objection to 47 or 48?

2         MR. DOUGLAS:  No, Your Honor.

3         THE COURT:  Without objection, Defendant's 47 and 48

4    are hereby admitted.  You may publish.

5    (Defendant's Exhibits 47 and 48 received in evidence.)

6    BY MR. GARVIN:

7    Q.   Sir, are you able to see the monitor?

8    A.   Yes, sir.

9    Q.   Okay.  And you see -- this letter was discussed yesterday.

10   It's dated October 26th, 2020.

11   A.   Correct, sir.

12   Q.   And it relates to Saneso and WVGE; correct?

13   A.   Yes.

14   Q.   And you stated to Dr. Ratnakar in this letter, "We had

15   previously discussed the federal program known as Payroll

16   Protection Program, PPP, that may be helpful to your companies

17   during the COVID pandemic economic slowdown.  I believe and

18   have conveyed to you that it is our best course to continue as

19   we are by utilizing R&D credits available currently."

20        "I would be pleased to discuss this matter further at any

21   time if you wish to do so."

22        Now, sir, was there a time when Saneso and WVGE had the

23   opportunity to apply for Payroll Protection Program

24   participation?

25   A.   Yes, there was.  That's why I wrote the letter.

G. Wyland - Cross-Examination (Mr. Garvin)

1  Q.    And isn't it a fact that, with regard to that program,
2  what is available is a forgivable loan?  Isn't that right?
3  A.    To my knowledge, yes.
4  Q.    And so what you were asked by Nitesh Ratnakar is "Does" --
5  "Do the companies Saneso and WVGE qualify for this forgivable
6  loan?"  Isn't that correct?
7  A.    Yes.
8  Q.    And to make it clear:  If you qualified, the company would
9  receive a loan to use to pay for payroll, and the loan may be
10  declared forgiven, which means it would not have to be paid
11  back.  Isn't that true?
12  A.    That's my understanding, yes.
13  Q.    And so this could have meant, to Saneso and WVGE, a
14  substantial amount of money given the size of their payrolls;
15  isn't that true?
16  A.    I would agree with that.
17  Q.    And so, at this time, you honestly believed that the
18  research and development tax credits were eliminating any tax
19  obligation -- payroll tax obligation, so it was not necessary
20  to get involved in Payroll Protection Program loans.  Isn't
21  that true?
22  A.    That's correct.
23  Q.    And so this was further evidence that you continued to
24  think that the research and development credits that were being
25  earned by both Saneso and WVGE were sufficient to eliminate the

G. Wyland - Cross-Examination (Mr. Garvin)

1   entire withholding and the employer's portion of FICA and

2   Social Security; correct?

3   A.   Well, yes, but the FICA portion and the Medicare portion.

4   Q.   Okay.  All right.

5            MR. GARVIN:  Now if we could please go to the next

6   exhibit.

7   BY MR. GARVIN:

8   Q.   Sir, I'm now showing you a letter that is dated

9   August 21st, 2022, and ask if that is your signature.

10  A.   Right.  We have discussed this previously, I believe.

11  Q.   Yes.  I think this one was discussed yesterday with

12  counsel.

13       And this one says, "There is a new federal program known

14  as the Employee Retention Credit Program that may be helpful to

15  your companies.  Information is still becoming available at

16  this time.  Although I believe we would be eligible for the

17  credit, I believe we should continue to use existing credits

18  available for research and development and perhaps revisit the

19  ERC when more information on it becomes known."

20       Now, this program, the Employee Retention Credit, is

21  different than the PPP, Payroll Protection Plan, in that it is

22  not a loan, but a tax credit; right?

23  A.   Yes.

24  Q.   And that means if you had a tax obligation, it could be

25  offset by the tax credit; correct?

G. Wyland - Cross-Examination (Mr. Garvin)

1  A.    Yes.

2  Q.    However, at this time that you prepared this letter, you

3  still honestly believed that the research and development tax

4  credit was sufficient to meet the entire obligation with

5  regards to payroll taxes for the quarter for both Saneso and

6  WVGE; isn't that true?

7  A.    Yes, it's true.

8  Q.    And you communicated that to Dr. Ratnakar; isn't that

9  true?

10 A.    Yes.

11 Q.    And you knew that Dr. Ratnakar relied upon your expertise

12 as an accountant and somebody who knew taxes, especially

13 payroll; isn't that right?

14 A.    Yes.

15 Q.    And Dr. Ratnakar never held back any information from you;

16 isn't that true?

17 A.    No.  Why would he have to?

18 Q.    And so when you gave him advice, you were giving him

19 advice with all the knowledge that was available at the time;

20 correct?  Or the information that was available.

21 A.    The information, yes.

22 Q.    And your advice was being made in good faith; correct?

23 A.    Absolutely.

24 Q.    And to the best of your knowledge, when Dr. Ratnakar

25 relied upon you and asked you for information, he was also

G. Wyland - Cross-Examination (Mr. Garvin)

1  acting in good faith; isn't that true?

2  A.   Yes.

3        MR. GARVIN:   Now if we could please put on the screen

4  Defendant's Exhibit 55.

5        (Pause in proceedings.)

6  BY MR. GARVIN:

7  Q.   Now, Mr. Wyland, I'm showing you now what is in evidence

8  as Defendant's Exhibit 55.  And it's on C&G Tax Services, Inc.,

9  letterhead.  The document is dated May 21st, 2018, to

10 Elizabeth Granados.

11        Do you see that, sir?

12 A.   Yes, sir.

13 Q.   It says -- now, you're writing this letter to

14 Ms. Granados.  Because as you stated earlier today, you and

15 Dr. Ratnakar wanted to resolve this civil tax matter.

16 A.   Absolutely.  Yes.

17 Q.   And so what happened here is that there was an overpayment

18 of taxes; isn't that true?

19 A.   There was.

20 Q.   So this says in the first sentence, "Please recall our

21 conversation in mid April regarding my client referenced

22 above."

23        That's a conversation that you had with Ms. Granados in

24 mid April; correct?

25 A.   Yeah.  Regarding Dr. Ratnakar.

# Exhibit "B"

# C&G Tax Services Inc.

June 9, 2016

Nitesh Ratnakar
Saneso Inc. & WW Gastroenterology

**Ref.    R&D Tax Credits**

Dr. Ratnakar,

R&D credits are available to companies engaged in research and development of new products and processes. Recently passed PATH act made these credits permanent. These credits can be applied dollar for dollar towards corporate income, pass through income and all company payroll taxes. We will be happy to assist with these in case your company proceeds with R&D of the new medical endoscope.

Should you have questions or need additional information, please contact us.  Thank you for your consideration and assistance.

Sincerely and Respectfully,

Glen Wyland
Accountant



DEFENDANT'S
EXHIBIT
**46**
Case No. 2:24-CR-04-(KLEEH)

# C & G TAX SERVICES

-4106                                                                ELKINS, WV  26241

October 26, 2020

RE;  Saneso and WV Gastroenterology

Dr.  Ratnakar:

We had previously discussed the federal program known as the PAYROLL PROTECTION PROGRAM (PPP) that may be helpful to your companies during the Covid pandemic economic slowdown.  I believe and have conveyed to you that it is our best course to continue as we are by utilizing R & D credits available currently.

I would be pleased to discuss this matter further at any time if you wish to do so.

Sincerely and Respectfully.

Glen Wyland
ACCOUNTANT

**DEFENDANT'S EXHIBIT**

**47**

Case No. 2:24-CR-04-(KLEEH)

D-004987

# C & G TAX SERVICES

106                                                    ELKINS, WV  26241

August 21, 2022

RE:  Saneso and WV Gastroenterology

Dr. Ratnakar:

There is a new federal program known as the **EMPLOYEE RETENTION CREDIT PROGRAM (ERC)** that may be helpful to your companies.  Information is still becoming available at this time.  Although I believe we would be eligible for the credit, I believe we should continue to use existing credits available for research and development and perhaps revisit the ERC when more information on it becomes known.

I would be pleased to discuss this matter further if you wish to do so.

Sincerely and Respectfully.

Glen Wyland

Accountant

DEFENDANT'S
EXHIBIT

**48**

Case No. 2:24-CR-04-(KLEEH)

Exhibit "C"

US Law Week
July 18, 2023, 4:00 AM

# The Fourth Circuit Has the Most Liberal Rule 33 Interpretation

*Tanisha Palvia and Jim McLoughlin of Moore & Van Allen analyze the Rule 33 standard, the path to the Supreme Court for this important circuit split, and its potential impact on criminal cases.*

The federal circuits are split on the standard for granting a new trial under Rule 33 of the Federal Rules of Criminal Procedure after a criminal conviction. In May, the Fourth Circuit weighed in, adding to the divide.

In *U.S. v. Rafiekian*, the court affirmed the district court's grant of a new trial, which was based solely on the trial judge's disagreement with jury inferences drawn from the evidence.

*Rafiekian II* arose from the prosecution of an executive of former national security adviser Michael Flynn's Flynn Intel Group. Bijan Rafiekian was accused of acting as an unregistered agent of Turkey as well as conspiring to act as an unregistered agent and to make a false Foreign Agents Registration Act filing.

After the jury voted to convict, the district court granted Rafiekian's Rule 29 motion, concluding no rational juror could find that he had acted as an unregistered agent for Turkey or that he had filed a false FARA registration. The district court conditionally ordered a new trial under Rule 33. The government appealed.

In *Rafiekian I*, a Fourth Circuit panel reversed the Rule 29 acquittal. The panel also ruled the district court had not explained its Rule 33 ruling sufficiently. On remand, in a 51-page opinion, the district court again granted a new trial based solely on disagreement with jury inferences from the evidence. The government appealed again.

A Fourth Circuit panel of three judges affirmed the grant of the new trial, holding on a Rule 33 motion, the test is whether the "evidence weighs so heavily against the verdict that it would be unjust to enter judgment" and finding the district court did not abuse its discretion when basing its decision solely on disagreement with jury inferences.

The panel held that the "key question ... is not what *kinds* of evidence support the verdict, but the *weight of that evidence*." The panel took its 1992 decision, *United States v. Campbell*, one step further, ruling that disagreement with jury inferences alone can be the basis for granting a new trial, a holding that no other circuit has explicitly adopted.

Critical to the result, the panel limited its review to an abuse of discretion by the district court.
Combination of the abuse of discretion standard of review with the more lenient Rule 33 standard vests
significant power over new trial decisions with the district courts.

The panel's decision also emphasizes how critical it is to understand the differing standards for a Rule 29
motion for judgment of acquittal and a Rule 33 motion for a new trial.

Succeeding under Rule 29 is rare because the evidence, which must be viewed in the light most favorable
to the government, must be so deficient that acquittal is the only correct verdict. Since no such rule
applies under Rule 33, the defense has a more level playing field.

The panel rejected the government's argument that federal circuits are unanimous that a new trial can't
be granted solely based on disagreement with jury inferences and that Rule 33 requires "specific defects
or indicia of unreliability in the trial evidence."

On the surface, Rule 33 arguably provides little guidance on what the standard should be—it permits
grant of a new trial when "the interest of justice so requires."

The notes of the Advisory Committee on Rules address the timing of the motion, but don't comment on
the standard, stating "other[ than timing], it substantially continues existing practice." The circuits have
little consensus. The First and Third grant a Rule 33 motion if a "miscarriage of justice" or "manifest
injustice" would result.

The Second, Fifth, Sixth, Seventh, Eighth, Ninth, and Eleventh grant the motion only when "the evidence
preponderates heavily against the verdict to such an extent that it would be manifest injustice to let the
verdict stand," but the Fifth has acknowledged that it "has not always articulated a uniform standard."

The Tenth and DC circuits require "a definite and firm conviction that a mistake has been committed." With
the Fourth adding yet another standard to the mix, it is time for the US Supreme Court to weigh in to
resolve the issue once and for all.

With *Rafiekian*, the Fourth Circuit now has the most liberal interpretation of the Rule 33 standard, making
this issue ripe for the Supreme Court to address.

The government has a strong interest in settling the issue, since, as the law stands—at least in the Fourth
Circuit—cases based entirely on inferences drawn from circumstantial evidence (such as most white-collar
crimes) are susceptible to new trial determinations based solely on a district court disagreeing with the
jury's inferences.

On May 13, the government requested more time from the Fourth Circuit to file a petition for rehearing en
banc, which requests all judges of the Fourth Circuit to hear a case. The motion was granted, extending
the time to file to July 3, 2023. But that deadline passed, and the government didn't file the petition for
rehearing, leaving the Supreme Court as the only remaining path for review.

The case is United States v. Bijan Rafiekian, 68 F.4th 177 (4th Cir. 2023), decided May 18, 2023.

*This article does not necessarily reflect the opinion of Bloomberg Industry Group, Inc., the publisher of Bloomberg Law and Bloomberg Tax, or its owners.*

**Author Information**

Tanisha Palvia is member of Moore & Van Allen's litigation group. She represent individuals and corporations in white-collar criminal prosecution and government enforcement actions.

Jim McLoughlin is a member of Moore & Van Allen's litigation group, with more than 35 years of experience in civil disputes, criminal investigations, and trials.

Write for Us: Author Guidelines

© 2023 Bloomberg Industry Group, Inc.   All Rights Reserved