IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

**UNITED STATES OF AMERICA,**

v.                                                            Criminal Action No. 2:24-CR-04
                                                                                            (KLEEH)

**NITESH RATNAKAR,**

                    Defendant.

**REPLY OF DEFENDANT, NITESH RATNAKAR, TO THE
UNITED STATES' RESPONSE IN OPPOSITION TO HIS
SUPPLEMENTAL ARGUMENT IN SUPPORT OF MOTION FOR NEW TRIAL**

Defendant, Nitesh Ratnakar, through his undersigned counsel, hereby files his reply to the United States' opposition [Doc.151] to the Supplemental Argument of Defendant Nitesh Ratnakar in Support of his Pending Motion for New Trial made Pursuant to Rule 33 [Doc.150], filed on September 25, 2025.

## LEGAL STANDARD

Rule 33(a) of the Federal Rules of Criminal Procedure provides that a district court may vacate a criminal conviction and grant a new trial if the interest of justice so requires. Fed. R. Crim. P. 33(a). See, *United States v. Rafiekian*, 68 F.4th 177, 186 (4th Cir. 2023) ("*Rafiekian II*") (quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982)). A motion for "new trial under Rule 33 'may be granted where the government had presented sufficient evidence for a reasonable jury to convict, but the court nevertheless disagrees with the jurors'

1

weighing of the evidence' in finding the defendant guilty." *United States v. Ordonez-Zometa*, 141 F.4th 531, 557 (4th Cir. 2025) (quoting *Rafiekian II*, 68 F.4th at 186). When ruling on a Rule 33 motion, the district court should weigh all of the evidence and it is the "cumulative" weight of the evidence the court should consider when deciding a Rule 33 motion. *See Rafiekian II*, 68 F.4th at 189.

> But we upheld the court's grant of a new trial, making clear that inferences counter to the government's view of the evidence were perfectly permissible in that context. We explained that the district court's "primary error" in granting the judgment of acquittal "was to draw inferences, unfavorable to the Government, from the evidence"—but that *"[i]n determining the necessity of a new trial, such inferences are allowed."* [United States v. Miller, 977 F.2d] Id, at 860 (emphasis added). Thus, even though the jury itself had apparently drawn inferences favorable to the government, the court was free to draw different inferences in making its new-trial determination.
>
> Here, the government implicitly conceded at oral argument that a new-trial order may be based at least in part on the court's disagreement with the jury's inferences regarding a witness's credibility. The problem, according to the government, arises when the new-trial order relies solely on the court's disagreement with the jury's inferences.
>
> We disagree. The key question in determining whether a new trial is warranted under Rule 33 is not what kinds of evidence support the verdict, but the weight of that evidence.
>
> To start, a motion for a new trial based on the "weight of the evidence" invites the court to do precisely what the district court did here: evaluate the persuasiveness of the inculpatory evidence "*in comparison with other evidence,*" Weight of the Evidence, Black's Law Dictionary (11th ed. 2019) (emphasis added), rather than simply asking whether each individual piece of evidence has an identifiable defect. This exercise is also "far different" from simply determining whether there is sufficient evidence to support the verdict, as is required in the judgment-of-acquittal context. * * * Such a global assessment of the evidence requires the court to weigh whatever evidence it has before it. *United States v. Rafiekian*, 68 F.4th 177, 189 (4th Cir. 2023).

# ARGUMENT

The United States argues in its opposition [Doc. 151] that Dr. Ratnakar's motion for a new trial should fail because:

1. Dr. Ratnakar's argument focuses solely on the testimony of Glen Wyland to the exclusion of all other evidence;

2. Dr. Ratnakar was educated as to his payroll tax obligations by Revenue Officers Granados and Pinkney;

3. Dr. Ratnakar's monitoring of his finances made it likely that he knew that substantial payroll tax deposits were not made by WVGE and Saneso; and

4. Dr. Ratnakar's reliance on accountant Glen Wyland was unreasonable.

Each of these items are addressed herein below.

### 1. Dr. Ratnakar's argument focuses solely on the testimony of Glen Wyland to the exclusion of all other evidence.

The Government argues in its response [Doc. 151] that Dr. Ratnakar has focused solely upon the testimony of Glen Wyland to the exclusion of all other evidence. This argument is factually incorrect. Dr. Ratnakar's motion for new trial addressed the testimony of each and every government witness. [Doc. 115] Naturally, the testimony of accountant Glen Wyland has been the focus of discussion because during his cross examination, Wyland's testimony incriminated himself and completely vindicated Dr. Ratnakar of the tax charges contained in counts one through forty-one of the indictment. Viewed in its

entirety the Government's evidence of Dr. Ratnakar's willfulness and his culpability as to counts one through forty-one has virtually no weight.

The Government argues that the jury had a right to render inconsistent verdicts and further had the right to disregard Wyland's testimony in its entirety. This argument fails to recognize that while the jury may have had the right to give no weight to Glen Wyland's testimony, that would have left the Government with no evidence of any weight as to the essential issues of willfulness and culpability. Further, when deciding a motion for new trial, the trial court has the right to give what it believes to be the appropriate weight to Wyland's testimony during cross examination, which was uncontroverted and against Wyland's own interests. *See United States v. Rafiekian*, 68 F.4th 177, 186 (4th Cir. 2023). In the instant case, the inculpatory evidence is woefully lacking and is greatly outweighed by the exculpatory evidence. When taken as a whole, the evidence is overwhelmingly in Dr. Ratnakar's favor. As a result, the motion for new trial should be granted.

During cross examination, Wyland testified against his own interests and clearly stated that it was his responsibility to handle the payroll taxes for West Virginia Gastroenterology and Endoscopy ("WVGE") and Saneso. Wyland testified that Dr. Ratnakar relied upon him to timely report, collect, and pay the payroll taxes in issue. Wyland testified that he lied to Dr. Ratnakar and told him that he had timely prepared and filed the Form 941 payroll tax returns for WVGE and Saneso when in fact he had not. Wyland further testified that he told Dr. Ratnakar that WVGE and Saneso did not owe any

4

payroll taxes because the research and development credits each entity had earned eliminated any payroll tax obligation.

On June 9, 2016, Wyland wrote to Ratnakar concerning Saneso's and WVGE's future use of research and development credits and stated:

> R&D credits are available to companies engaged in research and development of new products and processes. Recently passed PATH act made these credits permanent. These credits can be **applied dollar for dollar towards** corporate income, pass through income and **all company payroll taxes**. We will be happy to assist with these in case your company proceeds with R&D of the new medical endoscope. Defendant's Trial Exhibit 41 (Emphasis added).

In 2017, Dr. Ratnakar decided to bring Saneso's research and development activities "in house" to Elkins, West Virginia and hired Wyland to handle Saneso's payroll. During the period of time commencing on May 24, 2018, through October 31, 2022, Wyland's duties for both WVGE and Saneso included preparing the bi-weekly paychecks for the employees, timely paying over the appropriate payroll taxes to the IRS, preparing and filing the quarterly Form 941 payroll tax returns, and accurately applying the research and development tax credits as offsets to any payroll tax obligation of WVGE and/or Saneso. Wyland did not handle the payrolls of the Valley entities. Those entities, which also had substantial payroll, were handled by Maria Cominsky and Gil Ullom and had no problems with their respective payroll taxes. Wyland not only admitted that he had lied to Dr. Ratnakar about filing the payroll tax returns of WVGE and Saneso, but also admitted that he lied to several other of his clients during the same period of time about preparing and filing their payroll tax returns and misrepresented to these clients that they did not owe any

5

taxes to the IRS. (ECF#101-P.77/238) Dr. Ratnakar has no formal education or experience with accounting or tax matters and through his testimony Wyland confirmed that he knew that Dr. Ratnakar relied upon him when Wyland told him that he had timely prepared and filed the payroll tax returns of WVGE and Saneso. Equally important, Wyland admitted that Dr. Ratnakar also relied upon Wyland when Wyland told Dr. Ratnakar that WVGE and Saneso had no payroll tax obligations because the two entities had millions of dollars of research and development credits that eliminated any payroll tax obligation. Dr. Ratnakar's subjective belief that during the period of time commencing May 24, 2018, through October 31, 2022, WVGE and Saneso had no payroll tax liability because the entities had research and development credits that eliminated the obligation is highly relevant to the issue of willfulness. *See Cheek v. United States*, 498 U.S. 192 (1991), wherein the Supreme Court ruled that a defendant can be acquitted of willful tax evasion if they had a good-faith belief that they were not violating the law, even if that belief was objectively unreasonable.

There was no evidence introduced during the trial that contradicted this testimony. However, several witnesses testified that Wyland was the accountant for WVGE and Saneso who prepared the payroll and was responsible for filing the tax returns and making the appropriate payment, if any. The testimony of these witnesses was consistent with Wyland's testimony during cross examination. Wyland was the only witness that testified that he had discussed the application of research and development credits with Dr. Ratnakar.

## 2. Dr. Ratnakar was educated as to his payroll tax obligations by Revenue Officers Granados and Pinkney;

The testimony of Granados and Pinkney has little to no weight as to Dr. Ratnakar's alleged willfulness and culpability as to the tax charges contained in Counts One through Forty-One of the indictment. Further, the Government's continued assertion that Granados and Pinkney "educated" Dr. Ratnakar of WVGE's and Saneso's payroll tax obligations is misleading. Agent Granados testified that she met with Wyland and Ratnakar and educated them "about some items". (ECF#100-P.70/234). However, Revenue Officer Granados also testified that she was not knowledgeable about research and development credits and never discussed research and development credits with Dr. Ratnakar nor Wyland. She did not provide any education regarding these credits to Dr. Ratnakar. The payroll tax issues of WVGE that Granados was focused on were from quarters during 2015 and 2016. *See* Government's Trial Exhibit 81. These time periods were before research and development credits were used by Wyland to offset payroll taxes. Wyland did not apply research and development credits to payroll taxes until after Saneso moved its R&D activity in house during 2017.

The main disagreement between WVGE and Ms. Granados related to the payments that WVGE's insurance companies had made directly to the IRS but were unaccounted for in the IRS system. Wyland addressed this issue in a letter to Granados. *See* Defendant's Trial Exhibit 55 and ECF#100-P.127/234-131/234.

Revenue Officer Pinkney testified that his engagement with WVGE during the relevant time period was to collect penalties resulting from Ms. Grandos's earlier audit

after WVGE's appeal for penalty abatement was denied. Pinkney testified that he did not remember ever talking about research and development credits with Dr. Ratnakar or Wyland. Pinkney did not provide any education to Dr. Ratnakar on the issue of research and development credits. The general information provided by Granados and Pinkney regarding payroll taxes was completely devoid of any "education" on research and development tax credits. Nevertheless, the Government continues to assert that Dr. Ratnakar was "educated" about his payroll tax obligations as its evidence of Dr. Ratnakar's willfulness. The Government continues to miss the point. Dr. Ratnakar has never suggested that payroll taxes were not incurred. However, during the period of time from May 24, 2018, through October 31, 2022, it was Dr. Ratnakar's good faith understanding that the payroll taxes incurred were offset by research and development credits. Dr. Ratnakar believed this because his tax accountant, Wyland, told him this. The "education" Dr. Ratnakar received from Granados and Pinkney has little to no weight as to Dr. Ratnakar's willfulness and culpability as to the tax charges contained in Counts One through Forty-One of the indictment

### 3. Dr. Ratnakar's monitoring of his finances made it likely that he knew that substantial payroll tax deposits were not made by WVGE and Saneso

The Government argues that the fact that Dr. Ratnakar's routine of checking his bank account balances two to three times a day on average while he was simultaneously operating WVGE, Saneso, and the two Valley entities, is proof that Dr. Ratnakar knew that the required payroll tax payments were not being made by WVGE and Saneso. This argument ignores the fact that if WVGE and Saneso were offsetting their respective payroll

taxes dollar for dollar with research and development as Wyland represented, there would not be any large payroll tax payments to the IRS during the period of time commencing May 24, 2018, through October 31, 2022. This "evidence" relied upon by the Government to prove knowledge has literally no weight. This evidence does not tend to prove that Dr. Ratnakar willfully failed to pay the payroll taxes as alleged in the indictment.

### 4. Dr. Ratnakar's reliance on accountant Glen Wyland was unreasonable.

The Government continues to argue that Dr. Ratnakar's reliance on accountant Glen Wyland was not reasonable.  Glen Wyland was a college graduate with a degree in business with a major in accounting and finance. Wyland was an excellent student, received the grade of "A" in most of his classes, and graduated summa cum laude. Wyland has practiced as an independent accountant with C & G Tax Services, Inc. for over 30 years with his partner Mark Carruco, CPA.  The Government makes it seem that Dr. Ratnakar sought tax advice from someone with no education or experience. The Government argues that the fact that Wyland was paid approximately $6,000 a year is proof that he was not competent to render an opinion on payroll taxes. However, Gill Ullom, CPA, who is a sole proprietor accountant who managed the payroll for the Valley entities during the same time period charged an amount that was similar to Wyland for his payroll tax services. The Valley entities also had large payrolls and had no tax issues. The Government also argues without merit that Wyland's modest office prohibits Dr. Ratnakar from relying upon Wyland's tax advice. This argument is both irrelevant and absurd. More importantly, the Government's argument is inconsistent with the law. The relevant legal issue is whether Dr. Ratnakar

believed the information he was provided by Wyland, no matter if it was objectively unreasonable. *See Cheek v. United States*, 498 U.S. 192 (1991).

The Government cites clerical errors on W2's and paystubs for a few employees, all of which were corrected by Wyland, as a basis for its claim that Dr. Ratnakar's reliance on Wyland was unreasonable. While a few employees had delays with their refunds they were largely during COVID affected years. Company managers testified that there were no systemic issues with Wyland's payroll work, most of the over 300 employees in the relevant time-period had no issues with their payroll while Wyland prepared thousands of payroll documents without errors during this period of time.

Dr. Ratnakar relied on Wyland not only for his opinion on utilization of research and development credits, but also, on his opinion against utilizing the Payroll Protection Plan ("PPP") and the Employee Retention Credit ("ERC") for WVGE and Saneso. The companies were eligible for substantial funds under these programs *See* Defendant's Trial Exhibits 46, 47, and 48. The Government's claim that Dr. Ratnakar did not rely upon Wyland's advice when the evidence shows that Dr. Ratnakar even relied upon Wyland's advice when such reliance caused WVGE and Saneso to pass on readily available Government funds to their financial detriment simply defies logic.

## Conclusion

The overwhelmingly greater weight of the evidence in the instant case establishes that Dr. Ratnakar is not guilty of the tax charges contained in Counts One through Forty-One of the indictment. Accountant Glen Wyland told Dr. Ratnakar that he had timely prepared and filed the payroll tax returns for WVGE and Saneso using accumulated

research and development credits to offset the payroll tax liability dollar for dollar eliminating any tax obligation. This evidence should be given great weight. The Government's inculpatory evidence is largely circumstantial and deserves little to no weight. The interests of justice require a new trial.

Respectfully submitted,

*s/s David M. Garvin*
David M. Garvin
Pro Hac Vice Counsel for Defendant
David M. Garvin, P.A.
2333 Ponce De Leon Blvd.
Suite 314
Coral Gables, Florida 33134
Tel: 305-371-8101
Fax: 305-371-8848
Email: dgarvin@garvin.law
Email: ontrial2@gmail.com

*/s/ Harry A. Smith III*
Harry A. Smith III
Counsel for Nitesh Ratnakar
Jory & Smith LC
10 South Randolph Avenue
Elkins, West Virginia 26241
Tel: 304-636-3553
Email: hasmith@jorysmith.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 14, 2025 I electronically filed the foregoing response with the Clerk of the Court using CM/ECF, which will send notification of such filing to all counsel of record.

*/s/ Harry A. Smith, III*
Harry A Smith, III
