IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

     Plaintiff,

  v.                                  CRIMINAL NO. 2:24-CR-4
                                        (KLEEH)

NITESH RATNAKAR,

     Defendant.

## ORDER DENYING MOTIONS FOR NEW TRIAL AND RENEWED JUDGMENT OF ACQUITTAL [ECF NOS. 115, 116]

Pending before the Court are Defendant Nitesh Ratnakar's Motion for New Trial [ECF No. 115] and Renewed Motion for Judgment of Acquittal [ECF No. 116]. For the reasons discussed herein, Defendant's Motions [ECF Nos. 115, 116] are **DENIED.**

### I.   <u>PROCEDURAL HISTORY</u>

Following a jury trial, Defendant Nitesh Ratnakar ("Ratnakar" or "Defendant") was convicted of thirty-eight counts of willful failure to pay over tax, in violation of Title 26, United States Code, Section 7202; and three counts of filing a false income tax return, in violation of Title 26, United States Code, Section 7206(1). Following his trial, Ratnakar filed *Defendant's Motion for New Trial* [ECF No. 115] and *Defendant's Renewed Motion for Judgment of Acquittal* [ECF No. 116] on December 22, 2024. The Government responded in opposition to the motions for new trial and acquittal on February 5, 2025 [ECF Nos. 122, 123], and

Defendant replied in support of his motions on March 9, 2025, and March 10, 2025 [ECF Nos. 132, 133].

On September 25, 2025, Defendant filed the *Unopposed Motion of Defendant Nitesh Ratnakar for Leave to Supplement His Pending Motion for New Trial Made Pursuant to Rule 33* [ECF No. 150], which seeks to provide additional argument regarding the jury's consideration of Glen Wyland's testimony.[1] The Government filed its substantive response in opposition to the supplemental argument on October 8, 2025. ECF No. 151.

## II.  LEGAL STANDARD

Rule 29 of the Federal Rules of Criminal Procedure provides that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." A defendant who challenges the sufficiency of the evidence under Rule 29 faces an "imposing burden." United States v. Martin, 523 F.3d 281, 288 (4th Cir. 2008) (citing United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997)). The defendant must establish that "the record demonstrates a lack of evidence from which a jury could find guilt beyond a reasonable doubt." Id. at 277-78 (citing United States v. Burgos,

---

[1] Over no opposition from the Government, Defendant's motion to supplement his Rule 33 briefing [ECF No. 150] is **GRANTED**. The Court considers the arguments raised in ECF Nos. 150-152 in ruling upon Defendant's Motion for New Trial [ECF No. 115].

94 F.3d 849, 862 (4th Cir. 1996) (en banc)). When reviewing the sufficiency of the evidence supporting a criminal conviction, courts are "limited to considering whether there is substantial evidence, taking the view most favorable to the Government, to support it." Beidler, 110 F.3d at 1067 (citation and quotation marks omitted).

The court must uphold the jury's verdict if, when viewed in the light most favorable to the government, there is sufficient evidence from which "any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997). It is the jury, and not the court, who "weighs the credibility of the evidence and resolves any conflicts in the evidence presented." Beidler, 110 F.3d at 1067 (citation omitted). Reversal of a jury's verdict of guilty is reserved for cases "where the prosecution's failure is clear." Burks v. United States, 437 U.S. 1, 17 (1978).

Additionally, Rule 33(a) of the Federal Rules of Criminal Procedure permits the Court to vacate a criminal conviction and "grant a new trial if the interest of justice so requires." However, "a trial court should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstance when the evidence weighs heavily against." United States v. Smith, 451 F.3d 209, 217 (4th Cir. 2006) (citation and quotation marks omitted).

### III. <u>DISCUSSION</u>

**A. The Court Did Not Err in Excluding Evidence of Late Tax Payments.**

Defendant asserts that the Court denied him a fair trial by excluding evidence of late tax payments to the IRS. ECF No. 115. Defendant argues that evidence of his subsequent conduct was relevant to the issue of his knowledge in filing the tax returns. <u>Id.</u> at p. 38. Specifically, Defendant contends it was unfair for the prosecution to be permitted to introduce evidence of Forms 1040 filed in October 2023, but to prohibit evidence of the $1.8 million in payments made in November 2023. <u>Id.</u> at p. 9. The Defendant also notes that Special Agent Dakota Kelly incorrectly testified that Defendant had not made any deposits for his personal withholdings as of the date of his testimony. <u>Id.</u> at p. 10.

The Government contends the Court correctly precluded evidence of Ratnakar's untimely, post-investigation tax payments. ECF No. 122 at pp. 7-8. First, the Government argues that the payments are not relevant to the question of willfulness because they lack temporal relevancy to the time Ratnakar committed the charged offenses. <u>Id.</u> Second, the Government states that Defendant's summary of Special Agent Kelly's testimony is misleading, adds unstated assumptions, or misconstrues the "temporal goalposts" of Kelly's testimony. <u>Id.</u> Furthermore, Defendant did not cross Kelly on whether Ratnakar received a refund

or request a bench conference to argue Kelly's testimony opened the door to introduction of the payments. Id.

Defendant reiterates in his reply briefing that he did not handle the accounting or payroll taxes for his businesses and that he relied upon Glen Wyland's assurances that the taxes were paid. ECF No. 132 at p. 16. Thus, Defendant contends that he believed his companies were meeting their tax obligations from 2018 to 2022, and did not learn the truth until October 2023. Id. at pp. 17-18. Further, pursuant to Federal Rule of Evidence 103(b), Defendant asserts that he did not need to renew his objection regarding the Court's motion in limine ruling to reserve the argument for appeal. Id. at p. 120.

First, the Court's exclusion of the late payments did not deprive Defendant of a fair trial. Because Defendant asserts no new arguments and only incorporates or repeats the arguments previously made, the Court incorporates its previous findings [ECF No. 70].

Second, the Court addresses Defendant's arguments regarding Special Agent Kelly's testimony. Special Agent Kelly did not allude to Ratnakar receiving a refund. Rather, when testifying as to Ratnakar's individual income tax return for 2020, the tax return reflected a request for a refund in the amount of $6,833. ECF No. 99 at p. 115. Special Agent Kelly testified that the tax return would not have reflected a refund, had Ratnakar not reported a

federal tax withholding of $53,000 from West Virginia Gastroenterology and Endoscopy ("WVGE"). Id. Further, Defendant improperly characterizes Special Agent Kelly's testimony, which very clearly reflects that there were insufficient federal tax deposits to cover the withholdings reported on Ratnakar's individual income tax returns, at the time of the filings. See e.g., ECF No. 99 at pp. 116-117 (regarding Ratnakar's 2021 tax filings). Defendant did not object to this testimony or seek to clarify the record during his cross examination; regardless, Kelly did not testify as Defendant portrays now. Accordingly, the Court's exclusion of the late payments nor Special Agent Kelly's testimony entitles Defendant to a new trial and the Court **FINDS** herein that it committed no error on this issue. Thus, the Defendant's Motion on this ground is **DENIED**.

### B. The Courtroom Closure Was Too Trivial to Constitute a Sixth Amendment Violation.

Defendant alleges the following facts in support of his claimed Sixth Amendment violation, which are supported by affidavits of Defendant, Michelle Ratnakar, Sarah Ratnakar, David M. Garvin, and Harry A. Smith, III. ECF No. 115.[2] On November 12, 2024, prior to jury selection for Ratnakar's trial, Defendant's daughter and wife were allegedly told they were not permitted in

---

[2] The Court takes notice of *Defendant's Notice of Supplemental Authority in Support of His Motion for New Trial* [ECF No. 144], and the notice is **GRANTED**.

the courtroom until after voir dire was completed. Ratnakar's daughter, Sarah, originally entered the courtroom with the prospective jurors to observe jury selection. However, she claims she was sent out of the courtroom by a court employee who was checking in prospective jurors. Shortly after, Ratnakar's wife Michelle arrived at the courthouse and was allegedly stopped from entering the courtroom by a U.S. Marshal or Court Security Officer. Both women were told they could not be in the courtroom until after jury selection concluded. Defendant contends jury selection was closed to the public in general for the entirety of voir dire.

Both Ratnakar's wife and daughter submitted sworn affidavits averring that they believed it was court procedure to close voir dire, and thus did not tell Ratnakar or his attorneys about the exclusion until after the trial. Ratnakar, Mr. Garvin, and Mr. Smith additionally submitted affidavits which state they were unaware Defendant's family members were not permitted in the courtroom, and that Ratnakar did not agree to closing jury selection off from the public.

### 1. Sixth Amendment Right to a Fair Trial

"[T]he Sixth Amendment right to a public trial extends to the voir dire of prospective jurors." Presley v. Georgia, 558 U.S. 209, 213 (2010). The "improper restriction of the public right of access to trial is structural error." Huguely v. Clarke, 509 F. Supp. 3d 575, 601-02 (W.D. Va. 2020) (citing Weaver v.

<u>Massachusetts</u>, 582 U.S. 286 (2017)). "[A]n error has been deemed structural in some instances if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest." <u>Weaver</u>, 582 U.S. at 295. When there is a structural error, the "government is not entitled to deprive the defendant of a new trial by showing that the error was 'harmless beyond a reasonable doubt.'" <u>Id.</u> at 299 (quoting <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967)). "In general, the denial of a defendant's right to a public trial is a "structural error"—i.e. a defect 'affecting the framework within which the trial proceeds'— requiring reversal irrespective of whether the defendant demonstrates the error prejudiced his substantial rights." <u>United States v. Greene</u>, 431 F. App'x 191, 195 (3d Cir. 2011) (citing <u>Arizona v. Fulminante</u>, 499 U.S. 279, 310 (1991)).

However, "various courts have determined that—despite the structural nature of the right to a public trial—not every courtroom closure rises to a level implicating a defendant's Sixth Amendment rights. <u>United States v. Gutierrez-Calderon</u>, 2019 WL 3859753, at *15 (D.V.I. Aug. 16, 2019), <u>aff'd sub nom. United States v. Burgos-Montanez</u>, 2023 WL 2770822 (3d Cir. Apr. 4, 2023) (citing <u>Gibbons v. Savage</u>, 555 F.3d 112, 120 (2d Cir. 2009) ("It does not necessarily follow, however, that every deprivation in a category considered to be 'structural' constitutes a violation of the Constitution or requires reversal of the conviction, no matter

how brief the deprivation or how trivial the proceedings that occurred during the period of deprivation."); <u>United States v. Patton</u>, 502 F. App'x 139, 142 (3d Cir. 2012); <u>United States v. Perry</u>, 479 F.3d 885, 890 (D.C. Cir. 2007)).

> So although the public-trial right is structural, it is subject to exceptions. . . Though these cases should be rare, a judge may deprive a defendant of his right to an open courtroom by making proper factual findings in support of the decision to do so. . . . The fact that the public-trial right is subject to these exceptions suggests that not every public-trial violation results in fundamental unfairness.

<u>Weaver</u>, 582 U.S. at 298 (citing <u>Waller v. Georgia</u>, 467 U.S. 39, (1984)).

### a.    The Values Furthered by the Public Trial Guarantee

"An unjustified courtroom closure only infringes a defendant's Sixth Amendment rights if it undermines the values the Supreme Court identified in <u>Waller v. Georgia</u>, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) as fundamental to the public trial guarantee." <u>Patton</u>, 502 F. App'x at 141–42.

> The Supreme Court has described the values furthered by the public trial guarantee as four: 1) to ensure a fair trial; 2) to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions; 3) to encourage witnesses to come forward; and 4) to discourage perjury.

<u>Peterson v. Williams</u>, 85 F.3d 39, 43 (2d Cir. 1996).

> While the accused does have a right to insist that the *voir dire* of the jurors be public, there are exceptions to this general rule. '[T]he right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information.' . . . 'Such circumstances will be rare, however, and the balance of interests must be struck with special care.'"

Presley, 558 U.S. at 213 (quoting Waller, 467 U.S., at 45).

"[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." Waller, 467 U.S. at 48. If a courtroom closure does not implicate the values identified in Waller and is also trivial, the Sixth Amendment is not infringed. See Patton, 502 F. App'x at 142.

"A district court violates a defendant's right to a public trial when it totally closes the courtroom to the public, for a non-trivial duration, without first complying with the four requirements established by the Supreme Court's Press-Enterprise and Waller decisions." United States v. Withers, 638 F.3d 1055, 1063–64 (9th Cir. 2011) (finding a Sixth Amendment violation when the courtroom was closed for a full afternoon, during which the entirety of voir dire and opening arguments were completed).

**b.  The Triviality Standard**

The triviality standard looks "to whether the actions of the court and the effect that they had on the conduct of the trial deprived the defendant—whether otherwise innocent or guilty—of the protections conferred by the Sixth Amendment." Id. at 688. See United States v. Perry, 479 F.3d 885, 890 (D.C. Cir. 2007) ("A courtroom closing is trivial if it does not implicate the values served by the Sixth Amendment as set forth in Waller."). "In determining whether a closure was trivial, we examine the actions of the court and their effect on the conduct of the trial." Patton, 502 F. App'x at 142. For example, a closure may be trivial and not implicate the values advanced by the public trial guarantee if a trial judge is unaware of the closure and the closure was limited in scope and duration. Id.; United States v. Al-Smadi, 15 F.3d 153, 154 (10th Cir. 1994) (concluding that before a defendant can claim a violation of his Sixth Amendment rights, "some affirmative act by the trial court meant to exclude persons from the courtroom" must occur); Patton, 502 Fed. Appx. at 142 (finding no constitutional violation occurred when members of defendants' families were not permitted in courtroom because it was already filled, it was not the trial Court's customary practice to close the courtroom to anyone during voir dire, and there was no showing that the Court was even aware of anyone being temporarily kept in the hallway).

Additionally, a courtroom closure may be trivial if the courtroom is only closed for a few hours of a multi-day voir dire proceeding. <u>Gibbons</u>, 555 F.3d at 114-15, 121. But, "[a] courtroom closure that lasts for the entire jury selection process cannot be deemed trivial." <u>United States v. Santos</u>, 501 F. App'x 630, 634 (9th Cir. 2012). As such, a "trial court's intentional, unjustified closure of a courtroom during the entirety of voir dire cannot be deemed 'trivial'." <u>Gupta</u>, 699 F.3d at 689.

"The absence of 'some affirmative act by the trial court meant to exclude persons from the courtroom,' or ratification of a court employee's or security officer's unilateral decision makes it more likely that closure of a particular proceeding will be deemed trivial." <u>Constant</u>, 912 F. Supp. 2d at 306 (citing <u>Greene</u>, 431 Fed. Appx. 191 (collecting cases)). Importantly, "courts have placed considerable emphasis on the role of the trial judge in assessing whether a closure is of constitutional magnitude and have resisted ascribing to judges the unauthorized actions of courthouse personnel." <u>Greene</u>, 431 F. App'x at 196. For example, the Fourth Circuit found a bailiff's temporary refusal to allow members of the public into the courtroom to be trivial because the constitutional deprivation only existed for a short time and the Court quickly re-opened the courtroom upon learning of the closure. <u>Snyder v. Coiner</u>, 510 F.2d 224, 230 (4th Cir. 1975). In contrast, "when a trial judge is initially unaware of a closure but

subsequently ratifies actions taken by courthouse personnel to limit access to the courtroom, such 'ex-post approval' is sufficient to trigger constitutional considerations." Greene, 431 F. App'x at 196 (quoting United States v. Smith, 426 F.3d 567, 572 (2d Cir. 2005)).

However, "the Supreme Court did not intend the holding of Presley to be extended to unilateral actions taken by court security staff about which the trial judge was completely unaware." Id. at 197 (finding the District Court properly concluded the Defendant did not suffer harm of constitutional dimension when a court security officer temporarily prevented his brother from entering the courtroom). See also, United States v. Lewis, 2022 WL 216571, at *8 (6th Cir. Jan. 25, 2022) (finding partial court closure did not violate Defendant's Sixth Amendment rights when it occurred without the district judge's knowledge); United States v. Rinaldi, 2021 WL 1212669, at *11 (M.D. Pa. Mar. 31, 2021), aff'd, 2023 WL 3034327 (3d Cir. Apr. 21, 2023) (denying motions for new trial and judgment of acquittal and finding no Sixth Amendment violation when the court did not enter an order or take any affirmative action to close the courtroom during jury selection and neither party raised concern during voir dire that the public was not being admitted to courtroom).

c.    **The Alleged Courtroom Closure Was Trivial.**

Defendant argues that closing the courtroom during voir dire violated his Sixth Amendment right to an open and public trial and that the structural error warrants a new trial. Defendant contends that the closure was not trivial because no one from the public was permitted to stay for jury selection and the closure lasted the entire duration of voir dire. Furthermore, the Waller factors were not discussed on the record prior to closing jury selection to the public.

The Defendant also notes that courts disagree regarding the relevancy of whether a courtroom closure was intentional or inadvertent. Defendant contends that the facts at issue are too significant to fall under the rare triviality exception. Further, Defendant asserts that he did not waive his right to an open and public jury selection because he and his lawyers did not know of the exclusion until after the trial.

In contrast, the Government asserts that the described closure was too trivial to constitute a Sixth Amendment violation. The Government describes the closure as a "limited exclusion during a non-evidentiary portion of the trial." Additionally, the Government applies the Waller factors and argues (1) the exclusion did not have any impact on the trial's fairness; (2) the Court was not aware of the exclusion of Ratnakar's family or the public during jury selection; (3) the closure did not discourage witnesses

14

from coming forward; and (4) the closure did not impact the value of discouraging perjury.

Here, the record before the Court does not support that Ratnakar's Sixth Amendment rights were violated or that a new trial is warranted. First and foremost, the Court does not have a practice of closing the courtroom during jury selection proceedings and did not take any affirmative action to exclude members of the public from observing voir dire in Ratnakar's case. Any actions or statements which led Michelle Ratnakar or Sarah Ratnakar to believe they could not be in the courtroom were unsanctioned and were done without notice to the Court.

The Court ultimately concludes that the exclusion of Ratnakar's daughter and wife from the courtroom during jury selection is trivial because the Court was not aware of the closure and the closure was limited in scope and duration. The affidavits submitted in support of Defendant's motion for new trial do not prove that the courtroom was completely closed during voir dire; the affidavits do not provide that the court doors were sealed during voir dire or that the Ratnakars observed others being excluded from the courtroom. Thus, the scope of the alleged closure is small.

Importantly, no one raised concerns with the Court before, during, or shortly after jury selection. Had Defendant, defense counsel, or Defendant's family inquired with the Court, the Court

would have made clear that jury selection is an open proceeding
and the Ratnakars would have been permitted to observe all the
open proceedings. According to Defendant's briefing, no one
noticed that Defendant's family was not in the courtroom — despite
having three attorneys at counsel's table. The Court does not
expect Defendant or his family to be aware of the intricacies of
the Sixth Amendment, but defense counsel could have and should
have raised this issue during jury selection. Counsel both state
in their affidavits that they were unaware of the routine practice
of the courtroom staff; this implies that they observed who was in
the courtroom and yet did not raise this issue.[3] Often, defendants
face trial alone, without familial or other support. Because the
Court does not close jury proceedings, the Court would not know,
without information from the parties, whether someone expected in
the courtroom is absent. While not determinative to the Court's
assessment of whether Ratnakar's Sixth Amendment rights were
violated, the Court finds it suspect that these allegations were
not brought forth until after the jury returned its verdict.[4]

_____

[3] If it were "routine practice of the courtroom staff" to exclude
the public from jury selection, the Court would have been required
to make findings on the record, in accord with Waller. No such
record was made because the Court did not close the Courtroom.

[4] See Rinaldi, 2021 WL 1212669, at *11 (noting the Defendant's
assertions that the voir dire was closed, "apparently purposely
raised only after the completion of jury selection and empanelment
of the jury, appear to be nothing more than an attempt to first
create an issue at trial and delay those proceedings, and now to

In conclusion, the Court finds that the alleged courtroom closure was trivial because Ratnakar's trial proceedings were closed at-most for a few hours of the six-day trial and the Court was not aware of anyone being temporarily kept from the courtroom.

**C. The Government Presented Sufficient Evidence to Support Conviction on Counts One through Forty-One.**

Lastly, Defendant argues he is entitled to a new trial or judgment of acquittal on each count of conviction. ECF Nos. 115, 116. Defendant argues (1) that the not guilty verdict for Count 42 indicates that Counts One through Forty-One were not supported by the evidence; (2) that the Government did not prove beyond a reasonable doubt that Ratnakar had the requisite intent and willfulness; and (3) that statements Glen Wyland made against his own interests should be given great weight and credited as truthful. ECF Nos. 115, 116, and 150.

The Government opposes each additional basis for new trial or acquittal. ECF Nos. 122, 123, and 151. First, the Government asserts there is no basis in the record to conclude that the jury rejected all the evidence in support of Count 42, merely because it determined Defendant was not guilty as to that count. The Government is correct.

---

further an issue for post-trial and appellate consideration").

Inconsistent verdicts, in and of themselves, are not grounds for a new trial. "[I]t has long been settled that inconsistent jury verdicts do not call into question the validity or legitimacy of the resulting guilty verdicts." United States v. Davis, 801 F. App'x 75, 78-79 (4th Cir. 2020) (quoting United States v. Green, 599 F.3d 360, 369 (4th Cir. 2010)). See United States v. Powell, 469 U.S. 57, 64 (1984). "A defendant 'cannot challenge his conviction merely because it is inconsistent with a jury's verdict of acquittal on another count.'" United States v. Legins, 34 F.4th 304, 316 (4th Cir.), cert. denied, 143 S. Ct. 266 (2022) (quoting United States v. Thomas, 900 F.2d 37, 40 (4th Cir. 1990)).

> Inconsistent verdicts therefore present a situation where 'error,' in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course.

Powell, 469 U.S at 65. Furthermore, "a criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts." Id. at p. 6; see United States v. Hassan, 742 F.3d 104, 144 n.36 (4th Cir. 2014) (declining to consider jury's acquittal of defendant on one conspiracy charge when considering challenge to sufficiency of evidence to support

18

conviction on related conspiracy charge because "a jury is permitted to return an inconsistent verdict if it sees fit to do so").

Here, the mere fact that the Defendant was found not guilty on one count of a forty-two-count indictment, does not establish the insufficiency of the evidence on all the counts of conviction. The crimes of willful failure to pay over tax and filing a false income tax return are comprised of different elements and require different evidence than the crime of obstruction of justice corruptly influence official proceeding. Caselaw is clear that the Defendant cannot merely call into question his convictions based upon the acquittal of other charges. Considering the weight of the evidence put on during the Government's case-in-chief on Counts One through Forty-One, justice does not require a new trial or acquittal on this ground.

Second, under Rule 29 and Rule 33(a), the Government put on sufficient evidence of Ratnakar's willfulness in support of Counts One through Thirty-Eight and Thirty-Night though Forty-One. While Defendant contends he was improperly subject to strict liability, the record reflects sufficient evidence to support conviction. The Government presented evidence that Defendant was personally and repeatedly educated on his responsibility to pay over the payroll taxes withheld from WVGE's employees, and that Defendant excessively reviewed his bank accounts, including those from which

the five-figure tax deposits should have been made. Even excluding evidence related to the obstruction charge, the evidence of repeated education during the civil collection cases and the Defendant's thorough review of his bank accounts, a rational jury could conclude Defendant was aware of his tax obligations and intentionally disregarded fulfilling those obligations regarding Counts One through Thirty-Eight and that he knew he was making false statements regarding withholdings on his tax returns in Counts Thirty-Nine through Forty-One. Thus, the Government met its burden as to evidence of Defendant's intent and justice does not require acquittal or a new trial.

Third, Defendant's arguments regarding Glen Wyland do not support a new trial or acquittal on Counts One through Forty-One. Defendant argues that Wyland provided uncontradicted testimony which supported Ratnakar lacked the requisite intent. ECF No. 115 at p. 39. Defendant contends that Wyland testified that it was his responsibility to pay over the funds and that Ratnakar did not know the payroll tax returns were not prepared or the funds paid to the IRS. ECF No. 116 at p. 30. Further, Defendant asserts that Wyland's testimony should have been considered credible because he made statements against his own interest, and if the jury disregarded all his testimony, it did not fulfill its obligation to determine whether Ratnakar acted willfully. ECF No. 150.

The Government contends that the jury accepted Defendant's

20

invitation to disregard Wyland's testimony. ECF No. 122 at p. 14. Further, the Government argues that Wyland's testimony does not require a judgement of acquittal on the tax charges because Rule 29 is not a vehicle to relitigate a witness's credibility.  ECF No. 123 at pp. 7-8. The Government posits that the jury disregarded Wyland's testimony altogether and from the other evidence in the record concluded that Defendant did not rely on Wyland to pay over the payroll taxes or to advise him on payroll tax obligations. Id. Under Rule 29 and viewing the evidence in the light most favorable to the government, there was sufficient evidence to support the crimes of conviction beyond a reasonable doubt.

Regarding Defendant's supplemental Rule 33 argument, the Government asserts that the Court is to consider the totality of the evidence and may not consider pieces of evidence or testimony in isolation. ECF No. 151 at p. 4. The Court agrees. Looking at the totality of the evidence, the jury's verdict on Counts One through Forty-One was well-supported.

The trial evidence showed, through many witnesses and exhibits, that Ratnakar was educated on his tax obligations and how to satisfy those obligations and that Ratnakar closely monitored his finances including the accounts where the tax deposits would have come from. There was also evidence for which a jury could conclude that any reliance on Wyland was not reasonable, including the contrasts between Wyland and the other tax professionals utilized

21

by Ratnakar and the employee complaints about Wyland's services. Furthermore, revenue officers testified that Ratnakar never provided them with copies of the 2016 letter on research and development credits when they were executing levies on WVGE's bank accounts, despite Defendant's claimed reliance on this letter to not pay over withheld trust funds taxes. Ultimately, justice does not require a new trial because the evidence did not weigh heavily against the guilty verdicts.

### IV.  CONCLUSION

For the reasons discussed herein, Defendant Nitesh Ratnakar's Motion for New Trial [ECF No. 115] and Renewed Motion for Judgment of Acquittal [ECF No. 116] are **DENIED**. *Defendant's Motion for Hearing on Post-Trial Motions* [ECF No. 134] is **DENIED AS MOOT**. Defendant's sentencing will be rescheduled by separate order.

It is so **ORDERED**.

The Clerk is **DIRECTED** to transmit copies of this Order to counsel of record and all appropriate agencies.

**DATED**:  November 18, 2025

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA