UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

CASE NO. 2:24-CR-04 (KLEEH)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) |
| | ) |
| NITESH RATNAKAR, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**DEFENDANT NITESH RATNAKAR'S
SUPPLEMENT TO HIS MOTION
<u>FOR BOND PENDING APPEAL</u>**

On April 16, 2025, Defendant, Nitesh Ratnakar, through his undersigned counsel, filed a conditional motion for bond pending appeal. [ECF #138] At the time, Defendant's motions for new trial [ECF #115] and judgment of acquittal [ECF #116] were pending. On November 18, 2025, the motions for new trial and acquittal were denied. [ECF #153] Sentencing is scheduled for January 28, 2026. [ECF #155] Dr. Ratnakar urges the Court to order a noncustodial sentence or, in the alternative, a sentence that may be served through home confinement that would permit Dr. Ratnakar to continue to medically treat patients, many of whom are cancer patients, in West Virginia and the southeast portion of Ohio.

1

Dr. Ratnakar hereby supplements the law and arguments previously made in his conditional motion for bond pending appeal [ECF #138] and adopts and incorporates by reference the law and arguments contained therein.

As previously stated in his conditional motion [ECF #138], Defendant seeks bond pending appeal pursuant to 18 U.S.C. Section 3143, and maintains that he is not likely to flee and he does not pose a danger to the safety of any person or community. Dr. Ratnakar intends to appeal his case to the Fourth Circuit Court of Appeals. The appeal is not for the purpose of delay, and as previously alleged in his conditional motion [ECF #138], will raise substantial issues, each of which independently will require a new trial if the appeal on any of the issues is determined to be meritorious.

In this pleading, Dr. Ratnakar seeks to supplement his motion on the issue of whether the closure of the entire voir dire phase of his criminal trial by courtroom personnel was a structural error that violated his Sixth Amendment right to an open and public trial.

### ARGUMENT

**The inadvertent closure of the entire voir dire phase of Dr. Ratnakar's criminal trial by courtroom personnel was a structural error that violated his Sixth Amendment right to a public trial**

The closing of the entire voir dire phase of Dr. Ratnakar's trial violated his right to a public trial. See *Weaver v. Massachusetts*, 582 U.S. 286, 292-293, 137 S.

Ct. 1899 (2017). The violation of a defendant's *Sixth Amendment* right to a public trial is structural error and the defendant is not required to prove prejudice unless raising the issue for the first time as a collateral claim for habeas corpus pursuant to 28 U.S.C. Section 2255. *Weaver v. Massachusetts*, 582 U.S. 286, 292-293, 137 S. Ct. 1899 (2017). The Supreme Court's determination of the closure in *Weaver* is dispositive of the issues presented for consideration in the instant case.

In *Weaver*, the Supreme Court found the following facts regarding the closure:

> When petitioner was tried in a Massachusetts trial court, the courtroom could not accommodate all the potential jurors. As a result, for two days of jury selection, an officer of the court excluded from the courtroom any member of the public who was not a potential juror, including the petitioner's mother and her minister. *Id.* at page 286

> As all of the seats in the courtroom were occupied by the venire panel, an officer of the court excluded from the courtroom any member of the public who was not a potential juror. So when the petitioner's mother and her minister came to the courtroom to observe the two days of jury selection, they were turned away. *Id.* at page 292

In *Weaver,* the voir dire comprised two days of an eighteen-day trial.

In the instant case, Dr. Ratnakar's wife and daughter were each separately excluded from the courtroom by two officers of the court for the entire voir dire. One court officer was stationed inside the courtroom, and the other court officer was stationed outside the courtroom. Dr. Ratnakar's wife and daughter were each asked by the court officers to either wait outside the courtroom or go out of the courthouse until the voir dire was completed.  Similar to Weaver's mother and her

minister, Dr. Ratnakar's wife and daughter were excluded from the Courtroom as part of the general public. They were neither asked nor did they disclose to the court officers that they were relatives of Dr. Ratnakar. The court officers informed Dr. Ratnakar's wife and daughter that they were not allowed into the courtroom for the entire voir dire for the sole reason that they were not potential jurors. The voir dire comprised half a day of a four and half day trial.

A side-by-side comparison of the facts of *Weaver* and the facts of Dr. Ratnakar's case reveals that the closure in the instant case was substantially similar to the closure in *Weaver*.

| *Description* | *Weaver* | *Ratnakar* |
|---|---|---|
| Phase of closure: | Voir dire | Voir dire |
| Closure duration: | Entire voir dire phase | Entire voir dire phase |
| Relative duration: | Voir dire 2 days, trial 18 | Voir dire ½ day, trial 4½ |
| Person excluded: | Mother and minister | Wife and daughter |
| Type of closure: | Inadvertent | Inadvertent |
| Judge's knowledge: | Did not know | Did not know |
| Who did closure: | A court officer | Two court officers |
| Closure Reason: | Courtroom restricted for potential jurors | Courtroom restricted for potential jurors |

In *Weaver v. Massachusetts*, 582 U.S. 286 (2017), the Supreme Court determined that the inadvertent closure of the entire voir dire to the defendant's mother and her minister, without the trial judge's knowledge, was a structural error.

> In the direct review context, the underlying constitutional violation – the courtroom closure – has been treated by this Court as a structural error. *Id*. at page 290
>
> The question then becomes what showing is necessary when the defendant does not preserve a structural error on direct review but raises it later in the context of an ineffective-assistance-of-counsel claim. *Id*. at page 300
>
> These differences justify a different standard for evaluating a structural error depending on whether it is raised on direct review or raised instead in a claim alleging ineffective assistance of counsel. *Id.* at page 303
>
> It is true that this case comes here on the assumption that the closure was a Sixth Amendment violation. *Id*. at page 304

The Supreme Court granted certiorari to Weaver in recognition that the inadvertent closure of the voir dire in that case was structural error. The Circuits had conflicting views as to the effect of raising the structural error issue for the first time as part of a writ of habeas corpus. "This Court granted certiorari to resolve that disagreement". *Id*. at page 294. In *Weaver*, the government did not oppose the finding that the inadvertent closure of the entire voir dire was a structural error. The government should not take a conflicting position in the instant case, where the closure was substantially similar to *Weaver*.

However, *Weaver* did not raise the structural error issue on direct review but raised it later in the context of an ineffective-assistance claim. Under these circumstances, the Supreme Court held that, even though the closure in *Weaver* was

5

structural, Weaver had the burden to show that his attorney's deficient performance prejudiced his defense.

> If, however, the defendant does not preserve a structural error on direct review but raises it later in the context of an ineffective-assistance claim, the defendant generally bears the burden to show deficient performance and that the attorney's error "prejudiced the defense." *Id.* at page 287-288.
>
> In the context of a public-trial violation during jury selection, where the error is neither preserved nor raised on direct review but is raised later via an ineffective-assistance-of-counsel claim, the defendant must demonstrate prejudice to secure a new trial. *Id.* at page 286

In Dr. Ratnakar's case he raised the violation of his right to a public trial in his motion for new trial and will address the issue in his appeal for direct review. Under these circumstances, the error remains structural, and Dr. Ratnakar is not required to prove that the closure of the voir dire phase of his trial caused prejudice to his case.

*Weaver v. Massachusetts*, 582 U.S. 286 (2017), by itself, should be dispositive of the issues raised in the instant case. The defendant respectfully submits that the issue supports his motion to remain on bond pending his appeal.

Several Circuits have reviewed an inadvertent closure of an entire phase of a trial, have determined it to be a structural error, and granted a new trial. The courts have not applied any mitigating factors when the closure involved an entire phase of

a trial. This holds true even in cases litigated prior to *Weaver v. Massachusetts*, 582 U.S. 286 (2017). These cases are as follows:

A. *United States v. Jose Negron-Sostre,* 790 F.3d 295 (1st Cir. 2015), case reversed wherein the entire voir dire phase was inadvertently closed by court personnel without an order by the trial judge;

B. *United States v. Smith*, 426 F.3d 567, 571 (2nd Cir. 2005), wherein the court stated that the district court erred in assuming that a defendant's Sixth Amendment rights cannot be violated unless a court itself restricts courtroom access; and

C. *Walton v. Briley, 361 F 3d 431* (7th Cir. 2004), wherein the trial judge did not take any action to close the courtroom to the public, however, the trial court's lack of knowledge was not dispositive, and a new trial was granted.

### Dr. Ratnakar does not pose a danger to the safety of any person or to the community.

Dr. Ratnakar has no prior contact with the criminal justice system and has otherwise led an exemplary life as a law-abiding citizen of the United States. He has satisfactorily met the conditions of his probation for approximately two years.

Dr. Ratnakar obtained his M.D. degree from the University of Delhi, India, in 1997. Thereafter, he completed his residency in Internal Medicine from the Chicago Medical School in 2002, a fellowship in Geriatric Medicine from the University of South Florida College of Medicine in 2003, and a fellowship from the University of Wisconsin Medical School in 2006. He had practiced Medicine in West Virginia and

Ohio since 2006. He was elected twice by his peers to serve as the Governor of the American College of Gastroenterology from 2014-2021. He serves on the clinical faculty at the West Virginia University School of Medicine and the West Virginia School of Osteopathic Medicine as Clinical Associate Professor of Medicine. He mentors medical students and physicians in training. He has several publications to his credit in reputed medical journals and is a recipient of the SCOPY award from the American College of Gastroenterology. He has worked with the United States Senate and the United States House of Representatives on healthcare legislation and policies impacting national public health. He has over fifty medically related United States patents to his credit and was inducted into the West Virginia Healthcare Hall of Fame by the West Virginia Executive magazine in 2023.

Courts frequently view stable employment and strong family ties as low-recidivism profiles emphasizing rehabilitation over punishment. Dr. Ratnakar is a family man first, with four U.S. citizen children and step-children who depend on him for support and being available as a father. Dr. Ratnakar's elderly parents depend on him for their care and upkeep. Dr. Ratnakar provides care for his 79 year old father suffering from dementia. Dr. Ratnakar is the sole gastroenterologist in his community of Elkins, WV, and one of only three in the Ohio Valley; both of which are designated as healthcare professional shortage areas (HPSA) by the Department of Health & Human Services. Over 30,000 patients, including over 2,000 veterans,

many with service-related ailments, use Dr. Ratnakar for their health care every year. Dr. Ratnakar's medical practice caters to a population of over 500,000, and has continued its normal operations since the jury verdict. Dr. Ratnakar accepts all patients into his practice regardless of health insurance or ability to pay. He has provided countless hours and more than $2.3 million in volunteer care during 2018-2023. He has provided over $800,000 in volunteer care since the indictment and the jury verdict. He employs 30-40 West Virginians and has paid over $500,000 in current payroll taxes in 2024-2025. A majority of the current employees have worked for Dr. Ratnakar for several years, predating the indictment and jury verdict. They know his character and moral compass, and have shown their continued support and loyalty after the jury verdict. They choose to work for Dr. Ratnakar because they trust his character and mission to serve. His colleagues have also written letters of support to this court. "Dr. Ratnakar is not only the sole gastroenterologist in the area, but an excellent one". "There is no one else in the state as qualified as he is to deal with certain gastrointestinal issues", and they trust him with their personal medical care. "Patients will travel hours to seek his care, and other gastroenterology providers refer patients to him due to his skill and expertise". "He is known for listening closely to and spending meaningful time with all of his patients". The community, where Dr. Ratnakar resides, has unmistakably demonstrated continued trust in him and does not consider him to pose a danger.

## CONCLUSION

The instant case raises issues that if granted by the appellate court will result in a new trial. The issue that Defendant was denied his Sixth Amendment right to an open and public trial is an issue that is a close call and serves as a proper basis for this court to grant Dr. Ratnakar's motion for leave to remain on bond pending his appeal.

December 31, 2025                               Respectfully submitted,

/s/ David M. Garvin
DAVID M. GARVIN
Florida Bar #347736
P.H.V. Counsel for Defendant
200 South Biscayne Boulevard
Suite 3150
Miami, Florida 33131
Tel: (305) 371-8101
Email: ontrial2@gmail.com
Email: dgarvin@garvin.law


*/s/ Harry A. Smith III*
Harry A. Smith III
Counsel for Nitesh Ratnakar
Jory & Smith LC
10 South Randolph Avenue
Elkins, West Virginia 26241
Tel: 304-636-3553
Email: hasmith@jorysmith.com

10

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 31, 2025 , I electronically filed the foregoing supplement to Defendant's motion to remain on bond pending appeal with the Clerk of the Court using CM/ECF, which will send notification of such filing to all counsel of record.

*/s/ Harry A. Smith, III*
Harry A. Smith, III
