## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF WEST VIRGINIA

### CASE NO.  2:24-CR-04 (KLEEH)

UNITED STATES OF AMERICA,)
                    )
  vs.                  )
                    )
NITESH RATNAKAR,      )
                    )
    Defendant.       )
_____ )

### REPLY OF DEFENDANT NITESH RATNAKAR TO THE RESPONSE OF THE UNITED STATES IN OPPOSITION TO HIS APPLICATION TO REMAIN ON BOND PENDING APPEAL

On April 16, 2025, Defendant, Nitesh Ratnakar, through his undersigned counsel, filed a conditional motion for bond pending appeal. [ECF #138] At the time, Defendant's motions for new trial [ECF #115] and judgment of acquittal [ECF #116] were pending. On November 18, 2025, the motions for a new trial and acquittal were denied. [ECF #153]. Dr. Ratnakar supplemented his motion for leave to remain on bond pending appeal on December 31, 2025 [ECF #156]. The arguments previously made in his conditional motion for bond pending appeal [ECF #138 and ECF #156] are adopted and incorporated by reference. Sentencing is scheduled for January 28, 2026. [ECF #155] Dr. Ratnakar has urged this Honorable Court to order a noncustodial sentence that will permit Dr. Ratnakar to continue to medically treat

1

patients, many of whom are cancer patients, in West Virginia and the southeast portion of Ohio. If the Court sentences Dr. Ratnakar to a period of incarceration, Dr. Ratnakar respectfully requests that he be permitted to remain on bond pending the outcome of his appeal.

Title 18 U.S.C. Section 3143 (b) provides:

(b) Release or Detention Pending Appeal By The Defendant.-

(1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds-

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in-

(i) reversal,

(ii) an order for a new trial,

\*\*\*

The Government in its response (ECF #157) admits that Dr. Ratnakar is not likely to flee and does not oppose a danger to the community if released. Further, the Government in its response does not argue that his appeal is for the purposes of delay. Instead, the Government argues that Dr. Ratnakar's appeal based, in part, upon the Sixth Amendment does not raise a substantial question of law or fact likely

to result in reversal or an order for a new trial. Dr. Ratnakar respectfully disagrees with the Government's position.

## ARGUMENT

### 1. The inadvertent closure of the entire voir dire phase of Dr. Ratnakar's criminal trial by courtroom personnel was a structural error that violated his Sixth Amendment right to a public trial

The closing of the entire voir dire phase of Dr. Ratnakar's trial violated his right to a public trial. See, *Weaver v. Massachusetts*, 582 U.S. 286, 292-293, 137 S. Ct. 1899 (2017). The closure of the *entire* voir dire in the instant case was substantially similar to the closure in *Weaver*. In the instant case, neither Dr. Ratnakar nor his lawyers were aware that Dr. Ratnakar's wife and daughter were not permitted in the courtroom during voir dire. This Honorable Court stated in its order denying Dr. Ratnakar's motion for new trial based upon the closure of the voir dire phase the following:

> The Court does not expect Defendant or his family to be aware of the intricacies of the Sixth Amendment, but counsel could have and should have raised this issue during jury selection. Counsel both state in their affidavits that they were unaware of the routine practice of the courtroom staff; this implies that they observed who was in the courtroom and yet did not raise this issue.  [ECF # 153 Page 16]

Dr. Ratnakar respectfully disagrees and intends to appeal this issue. Dr. Ratnakar believes that the statements contained in the affidavits are clear and unambiguous.

Dr. Ratnakar's lawyers stated they had never participated in a jury trial before this Honorable Court prior to the instant case. In relevant part, the affidavits state:

> 3. At approximately 9:30 am the jury selection process began.
>
> 4. This was my first jury trial before Judge Kleeh. I did not know the routine practice of the courtroom staff.
>
> 5. During the jury selection process the lawyers and Dr. Ratnakar were seated at the table located in the well of the courtroom.
>
> 6. I did not notice when visitors came or went because I was concentrating on selecting a jury.  [ECF # 155 Pages 54, 58]

At this time, it appears that there was no routine practice followed by the courtroom staff. However, if the attorneys had learned prior to trial of any long established routine practice of the courtroom staff that excluded the general public, the attorneys would have objected. There was nothing implied when the lawyers stated in their affidavits that they "did not know the routine practice of the courtroom staff". Dr. Ratnakar and his lawyers did not know what had occurred to Dr. Ratnakar's wife and daughter and therefore there was no meaningful opportunity to object.  The courtroom was filled with complete strangers who were prospective jurors. The attorneys sat at a table with their backs to the courtroom door and were single mindedly focused on selecting the jury. The government further states that this Court has made a "finding regarding counsels' failure to preserve the issue". [ECF #157 Page 12]. The government's argument is additionally rendered irrelevant in view of *Weaver*.

4

"In the context of a public-trial violation during jury selection, where the error is *neither preserved nor raised on direct review* but is raised later via an ineffective-assistance-of-counsel claim, the defendant must demonstrate prejudice to secure a new trial". Id. at 286.

In the instant case, the issue was raised with this court and will be raised on direct review at the Fourth Circuit, and it therefore remains a reversible structural error, outside the purview of plain error review. Dr. Ratnakar also respectfully disagrees with the above finding that the instant Sixth Amendment violation was trivial and plans to appeal this finding.

The government argues that the issue as to whether the Sixth Amendment violation in this case was trivial is not a substantial one of law or fact likely to result in a new trial. Dr. Ratnakar maintains that these issues are substantial issues of law or fact that if ruled upon on appeal in Dr. Ratnakar's favor will likely result in a new trial. The required elements necessary for Dr. Ratnakar to remain on bond pending appeal have been met.

In *Weaver v. Massachusetts*, 582 U.S. 286 (2017), the Government did not oppose the finding that the inadvertent closure of the entire voir dire was a structural error *** "*we respect the court's determination that the closure in this case was structural*". (See transcript from oral arguments at SCOTUS). In *Weaver*, the Supreme Court determined that the inadvertent closure of the entire voir dire to the defendant's mother and her minister, without the trial Judge's knowledge, was a structural error, which would have required a reversal had it been raised on direct

review. The Court granted certiorari to Weaver in recognition of this fact.

Because the violation of a defendant's *Sixth Amendment* right to a public trial is structural error, the defendant is not required to prove prejudice unless raising the issue for the first time as a collateral claim for habeas corpus pursuant to 28 U.S.C. Section 2255. *Weaver v. Massachusetts*, at 292-293. The violation of Dr. Ratnakar's right to a public trial issue was raised in his motion for a new trial and will be raised in his appeal for direct review. Under these circumstances, the error remains structural, and Dr. Ratnakar is not required to prove that the closure of the entire voir dire phase of his trial caused prejudice to his case.

The Circuits that have reviewed appeals involving the inadvertent closure of an entire phase of a trial have similarly determined it to be structural, and have not applied the triviality test to such entire-phase closures. This holds true even in cases litigated before *Weaver, Id.*. For example,

A. *United States v. Jose Negron-Sostre,* 790 F.3d 295 (1st Cir. 2015), case reversed wherein the entire voir dire phase was inadvertently closed by court personnel without an order by the trial judge;

B. *United States v. Smith*, 426 F.3d 567, 571 (2nd Cir. 2005), wherein the court stated that the district court erred in assuming that a defendant's Sixth Amendment rights cannot be violated unless a court itself restricts courtroom access; and

C. *Walton v. Briley, 361 F 3d 431* (7th Cir. 2004), wherein the trial judge did not take any action to close the courtroom to the public, and the trial court's lack of knowledge was not dispositive, and a new trial was granted; and

6

*D. United States v. Withers, 638 F3d 1055, 1063-64 (9th Cir. 2011),* finding a Sixth Amendment violation when the courtroom was closed for a full afternoon, during which the entirety of voir dire and opening arguments were completed".

The cases cited by the government are distinguishable from the case at issue.

Each of these cases are deficient in one or more of the three defining aspects of the

inadvertent closure of the entire voir dire phase in the instant case. The three aspects

are: 1) the cases cited by the government are pre-*Weaver*; 2) the closure in the case

cited by the government involved only **a part of a phase** of a trial, including in the

government's sentinel case, *Peterson v. Williams*, where during a *part of the*

*prosecution phase* the courtroom remained closed for *twenty minutes* following an

authorized closure of an undercover officer testimony, and 3) the triviality analysis

was restricted to closures that involved only **a part of a phase** of the trial.

The government, while accepting the *Weaver* closure was structural, simultaneously

takes a dichotomous position that triviality analysis should be applied to such

closure, in contradiction to the Supreme Court's precedents in *Waller v. Georgia,*

467 U.S. 39; *Presley v. Georgia*; *Weaver v. Massachusetts,* 582 U.S. 286; and

*Arizona v. Fulminante,* 499 U. S. 279, 309-310, (1991).

In *Waller v. Georgia,* 467 U.S. 39 (1984), the Supreme Court unmistakably

ruled that the structural error resulting from a closure of an entire-phase is not

dependent on its duration. "the closure of the entire suppression hearing here plainly

was unjustified." The Court made it clear again in *Presley v. Georgia,* 558 U. S. 209 (2010), that the Sixth Amendment coverage is not subservient to the duration of a voir dire or its relative duration to the trial. "Well, the uncle can certainly come back in once the trial starts. There's no, really no need for the uncle to be present during jury selection". "So when the petitioner's mother and her minister came to the courtroom to observe the two days of jury selection, they were turned away". *Weaver v. Massachusetts,* 582 U.S. 286 (2017). In *Weaver,* the voir dire comprised two days of an eighteen-day trial. The Supreme court, in all three cases, determined that the openness of the remainder of the trial did not compensate for the structural closure of the entire-phase at issue. The government's arguments plainly gut the Supreme Court's decisions in *Waller, Presley,* and *Weaver.* If the government's position is followed, an entire voir dire or any other phase of a trial that is typically of a shorter duration (suppression hearing, sentencing, verdict, etc.) could be closed for the entire-phase for any reason or no reason at all, and dismissed as trivial.

The cases relied upon by the government, which relate to partial-phase closures and predate *Weaver,* add very little substantive value to legal arguments relevant to the closure of the entire voir dire phase in the instant case.

While the government has elaborated at length, issues that this court found to be non-determinative, this court stated the following outlining its determinative issues:

8

"The Court ultimately concludes that the exclusion of Ratnakar's daughter and wife from the courtroom during jury selection is trivial because the Court was not aware of the closure and the closure was limited in scope and duration." ECF #153 Page15.

"In conclusion, the Court finds that the alleged courtroom closure was trivial because Ratnakar's trial proceedings were closed at-most for a few hours of the six-day trial and the Court was not aware of anyone being temporarily kept from the courtroom." ECF #153 Page17.

The crux of Dr. Ratnakar's argument is that the Supreme Court reviewed each of the determinative issues stated by this court in Weaver and determined it to be a structural error, not subject to triviality analysis, requiring reversal when raised on direct review.

## Section 2: Exclusion of Payment Evidence
## Violated Defendant's Fifth Amendment Due Process Clause

Dr. Ratnakar respectfully disagrees with the government's position that the exclusion of the tax payments he made to the IRS would be reviewed under 'abuse of discretion' standard. (ECF #157 Page 5). Instead, for the reasons set forth below, the exclusion of payment evidence in the instant case violated Dr. Ratnakar's right to due process under the Fifth Amendment and should be reviewed upon appeal to the Fourth Circuit as a potential violation of his constitutional rights.

The Fifth Amendment's Due Process Clause guarantees more than procedural formality; it ensures fundamental fairness. A core component of that guarantee is the defendant's right to present a meaningful defense. The Supreme Court has

emphasized that evidentiary rules, while important, cannot be applied in a way that deprives the accused of a fair opportunity to defend against the charges. *Crane v. Kentucky*, 476 U.S. 683 (1986).

> "The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense". *Id at* 690.
> ***
> "Evidence that is relevant, reliable, and *central to the defendant's claim of innocence* may not be excluded arbitrarily or disproportionately." *Id. at* 691.

In *United States v. Garber*, 607 F.2d 92 (5th Cir. 1979) (en banc) the court stated: "Where the defendant's intent is an element of the offense, the jury should be permitted to consider evidence that sheds light on the defendant's state of mind." 607 F.2d at 98. "Exclusion of such evidence may improperly remove from the jury's consideration the issue of criminal intent." *Id.*

In *United States v. Kokenis*, 662 F.3d 919 (7th Cir. 2011), the Seventh Circuit recognized that exclusion of evidence central to a defendant's good-faith defense can implicate due process, particularly where the government's theory hinges on intent. In *United States v. Litvak,* 808 F.3d 160 (2d Cir. 2015) the court stated: "When intent is an element of the offense, evidence that directly bears on the defendant's state of mind is ordinarily admissible." 808 F.3d at 185. "Excluding such evidence may deprive the defendant of a fair opportunity to defend against the charges." *Id.*

10

Also in *United States v. Kokenis*, 662 F.3d 919 (7th Cir. 2011) the court stated: "A defendant must be afforded a meaningful opportunity to present a complete defense, particularly where the evidence goes to intent." 662 F.3d at 927. In the instant case the payment of approximately $2 million in taxes to the IRS prior to indictment was the cornerstone of Dr. Ratnakar's defense. "Evidence of repayment or remediation may be relevant to the defendant's intent and state of mind." *United States v. Caspersen*, 275 F. Supp. 3d 570, 580 (S.D.N.Y. 2017). In *State v. DeGina*, 256 N.J. Super. 206 (App. Div. 1992), the court held that excluding evidence demonstrating lack of fraudulent intent violated due process and required reversal. In *DeGina,* the court held that excluding evidence demonstrating a lack of fraudulent intent violated due process and required reversal. In *People v. Whitlow*, 89 N.Y.2d 833 (1996), the court recognized that corrective conduct is admissible where intent is disputed and that exclusion may constitute reversible error when it deprives the jury of essential context.

a)    **The defendant was precluded from presenting relevant and reliable evidence central to his claim of innocence on Counts 1-38**

The defendant's central claim of innocence was based upon his reliance on his account's advice that R&D credits offset all payroll taxes for WVGE and Saneso. This was corroborated by written evidence and testimony of the accountant, both of which remain, uncontradicted. Dr. Ratnakar learned from the Government in mid-October 2023 that the information provided to him concerning payroll taxes by

11

accountant Wyland was wrong. The defendant immediately began gathering funds and paid approximately $2 million starting November 07, 2023 towards the payroll taxes due. The payments occurred months before the indictment in February 2024.

This Honorable Court determined, "The IRS CI informed Defendant of its investigation in April 2023, but Defendant did not seek to make payment or file any return until after October 2023. This six-month gap in time-gap between Defendant's knowledge of the investigation and commencement of payment offers menial probative value of Defendant's mindset during the 2018-2022 timeframe." [ECF #70]. The court did not consider the fact that prior to being advised by the Government of its investigation the defendant believed that the payroll taxes during the relevant time period were offset in their entirety by the available R&D credits. The action that Dr. Ratnakar took, starting in November 2023, to pay the payroll tax obligation of WVGE and Saneso after learning of Wyland's mistake in October 2023, was highly relevant to his knowledge and intent on the dates the tax payments were due.

The jury heard only that taxes were misapplied or unpaid. The jury was prevented from learning that the defendant corrected the issue voluntarily and promptly after he was told during October 2023 that the information provided to him by Wyland was wrong and there was a large amount due to the IRS for payroll taxes. The jury was left with a distorted picture of intent. This imbalance undermined the

12

adversarial process and resulted in a conviction based on incomplete or misleading facts. The exclusion effectively prevented the defendant from a meaningful opportunity to present a complete defense and presenting relevant and reliable evidence that was central to the defendant's claim of innocence. The holding in *Crane v. Kentucky, 476 U.S. 683 (1986)* should be controlling on this issue.

**b)    The Defendant was precluded from presenting the only evidence to his claim of innocence on Counts 39-41**

Counts 39-41 relate to the defendant's state of mind on or about October 23-28, 2023, when his new accountant e-filed his personal tax returns for 2020, 2021, and 2022, which Wyland falsely represented he had timely prepared and filed. Similar to other company employees, Wyland offset the defendant's payroll tax withholdings, as an employee of WVGE, with the available R&D credits.

> Q. And not only that. It -- not only did it wipe out the payroll tax responsibility, but it was also available to eliminate any pass-through income from the entity or any individual income tax that Dr. Ratnakar had; isn't that true?
>
> A. It was available.    Doc. #101 page 92 (Wyland)

Defendant was asked to e-file missing personal returns for 2020 -2022 by the DOJ in mid-October 2023, since those returns could not be located in the IRS system. The defendant immediately provided a copy of the tax return as previously prepared by Wyland to his new accountant for e-filing. The e-filings were done 10/23/23 - 10/28/23. Shortly after e-filing, the defendant mailed substantial payments starting

11/7/23 totaling approximately $2 million, not just towards his own withholdings, but also towards payroll taxes for all employees. These payments were made months before he even knew he was going to be indicted.

Agent Kelley testified that the defendant received or requested a refund in spite of not paying the taxes for the returns filed October 23-28, 2023. This was incorrect and highly prejudicial. Dr. Ratnakar had not only mailed the payments shortly after e-filing his returns, but also had not received any refunds.

> Q. Okay. And were there enough federal tax deposits made for this quarter to pay over that amount of money--
>
> A. There were not.
>
> Q. All right.  Did reporting that withholding figure help in any way to get that refund?
>
> A. Yes.
>
> Q. How?
>
> A. Without reporting that withholding, he would have had a tax due.
>
> Q. Okay.  He would not have gotten a refund at all.
>
> A. He would not have gotten a refund.   Doc #99 page 114 - 116 (Kelley)


> Q. Okay. And were there enough federal tax deposits made to cover those over $60,000 of withholdings?
>
> A. No, there was not.
>
> Q. And then if we could bring up the refund section. Can you tell from this whether the Defendant got a refund?
>
> A. This tax return is requesting a refund in the amount of $8,942.

Q. Okay.  And would the Defendant have qualified for such a refund if he didn't report the federal income tax withheld?

A. He would not have.      Doc. #99 page 117 (Kelley)


Q. Is that totaling over $60,000?

A. Yes

Q. Was there federal tax deposits made to cover that?

A. No

Q. Come out of that enlargement and bring up the refund section. Did the Defendant get a -- qualify for a refund that year?

A. He's requesting a refund of $20,085.

Q. Okay.  Would he have qualified for such a refund without reporting that figure?

A. He would not have.      Doc. #99 page 120, 121 (Kelley)


The government argues that Dr. Ratnakar should have renewed his argument at trial that his payments were relevant despite the fact, the Government's motion in limine had been fully briefed, and the Court was clear and definitive in its ruling. Rule 103(b) of the Federal Rules of Evidence states:

> (b) Not needing to Renew an Objection or Offer of Proof: Once the court rules definitely on the record - either before or at trial - a party need not renew an objection or offer of proof to preserve a claim of error for approval.

Furthermore, the Government's argument is factually incorrect. Once the testimony of the Government witnesses was known, the defense counsel requested

the court permit the payments. The court ruled against the payments mailed in November 2023, shortly after the 2022 tax returns were e-filed on October 28, 2023.

MR. GARVIN:  And this Court will recall that Dr. Ratnakar caused the money to be paid over in November of 2023.  So unlike the Counts One through Thirty-Eight that went all the way back to 2017, this tax return with regard to 2022, the Government says that the offense date was on October 23, 25 2023.  And as I just said, with extension, the '22 return is due in October of 2023.

THE COURT:  Refresh my memory, Counsel, when that return was actually filed.

MR. GARVIN:  I believe it's -

THE COURT:  Was it filed on October 23rd?

MR. GARVIN:  -- October 23rd, 2023, which is the date of -- that they have listed as the offense.

THE COURT:  Yeah. I realize that's the date.  Is that the date the returns were filed for Counts Thirty-Nine, Forty, and Forty-One?

MR. DOUGLAS:  Correct, Your Honor.

THE COURT:  Okay.  All right.  Thank you. I'm sorry, Mr. Garvin.  Go ahead.

MR. GARVIN:  So going back to that.  The -- this particular Defendant not only signed off, but the tax return was filed electronically.  The payment was sent by mail.  There was a specific check that was sent for the 2022 tax return to the IRS. November.

THE COURT:  But that was in November; correct?

MR. GARVIN:  It was in November, yes.

THE COURT:  What date in November?

MR. GARVIN:  I believe it was the last week of

THE COURT:  Okay.  All right.

16

MR. GARVIN:  So from the 23rd of October to the last week of November.  Four to five weeks.

THE COURT:  Is that evidence here?  I shouldn't say "here."  Is that evidence in the record at this point?

MR. GARVIN:  Well, no.

THE COURT:  Oh, okay.

MR. GARVIN:  -- tax return being filed.  The payment, as this Court may recall, the Court --

THE COURT:  Right.

MR. GARVIN:  -- ruled that we were precluded from mentioning payment.  As a result, the payment has not been introduced.

THE COURT:  Okay.  No.  Understood.  All right. The Court would deny the motion on Counts Thirty-Nine, Forty, and Forty-One. ***

 Doc. #103 pages 123-125


The payments mailed shortly after e-filing of the tax returns were not only central to Dr. Ratnakar's claim of innocence, it was  his only evidence of innocence and attested to his mindset on October 23-28, 2023 as listed in counts 39-41. A rational trier of facts may find voluntarily mailing payments shortly after e-filing taxes a benign misjudgment. The introduction of the proffered evidence was all but indispensable to the success of his defense. A trial where the defendant is precluded from presenting the only evidence in support of his claim of innocence is fundamentally compromised. *Crane v. Kentucky*, 476 U.S. 683 (1986), by itself should be dispositive on this issue.

The Fourth Circuit has ruled that when evidence is probative, then prejudice to the opposing party is generally not a proper basis for excluding probative evidence.

> "[W]hen considering whether evidence is unfairly prejudicial, damage to a defendant's case is not a basis for excluding probative evidence because evidence that is highly probative invariably will be prejudicial to the defense." *United States v. Tillmon*, 954 F.3d 628, 643 (4th Cir. 2019); *United States v. Sheffield* (4th Cir. 2024).

The Court in this instant case excluded the payments from evidence, fearing the risk of jury nullification.

> The court further recognizes the risk of jury nullification if the jury were to learn that Defendant has already paid back a large portion of his tax liability and is not convinced that such a risk could be eliminated through limiting instructions.
> ECF 70 # 448.

The Defendant respectfully maintains that a limiting instruction would have served the interests of justice and there is no evidence that the jury would have disregarded the Court's instructions. Instead, the relevant and reliable determinative payment evidence was withheld from the jury. As a result, the jury was left with an impression that Dr. Ratnakar intended to fraudulently get (and got) a refund without paying taxes. This alleged reprehensible conduct engaged by Dr. Ratnakar months into a criminal tax investigation and after education by the government of his accountant's misinformation regarding R&D credits, left the jury with a highly prejudicial, but false impression, that Dr. Ratnakar is simply a bad actor when it comes to tax compliance. This likely affected the jury's verdicts all of the tax counts.

The payment evidence was especially relevant when the Government's purported circumstantial evidence relating to its only remaining theory of guilt, that the defendant's alleged 'unreasonable reliance' on his accountant for R&D credits, is vacuous when viewed against the backdrop of the defendant forfeiting approximately $3.5 million in credits from payroll-related IRS programs during 2018-2022 due to errors from the same accountant. The Government's argument that that the jury's determination in part included a finding of 'unreasonable reliance' for counts 1-38 further supports the defendant's assertion that preclusion of payment evidence infringed on his Fifth Amendment rights. The jury may have reached a different conclusion and determined that the defendant relied on his accountant's advice based on the actions that he took upon learning of his accountant's error.

## CONCLUSION

The instant case raises constitutional issues that, if granted by the appellate court, will result in a new trial.  The issues that Defendant was denied his Sixth Amendment right to an open and public trial, and was denied due process under the Fifth Amendment, are close calls and each issue serves as a proper basis for this court to grant Dr. Ratnakar's motion for leave to remain on bond pending his appeal.

January 22, 2026

Respectfully submitted,

/s/ David M. Garvin
DAVID M. GARVIN
Florida Bar #347736
P.H.V. Counsel for Defendant
200 South Biscayne Boulevard
Suite 3150
Miami, Florida 33131
Tel: (305) 371-8101
Email: ontrial2@gmail.com
Email: dgarvin@garvin.law


/s/ Harry A. Smith III
Harry A. Smith III
Counsel for Nitesh Ratnakar
Jory & Smith LC
10 South Randolph Avenue
Elkins, West Virginia 26241
Tel: 304-636-3553
Email: hasmith@jorysmith.com


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 22, 2026, I electronically filed the foregoing reply to the response of the United States in opposition to Defendant's motion to remain on bond pending appeal with the Clerk of the Court using CM/ECF, which will send notification of such filing to all counsel of record.

/s/ Harry A. Smith, III
Harry A. Smith, III